# FRANCIS T. WHEELER ET AL.

## v.

# PULLMAN IRON & STEEL COMPANY ET AL.

*Corporations—Mismanagement of Corporate Business by Officers—Bill for Receiver—Allegations Must Be Specific.*

Upon a bill filed, seeking to take the management of a corporation out of the hands of its officers, to have a receiver appointed and an accounting with its creditors, its affairs wound up and its assets distributed among its stockholders, upon the ground that its affairs were not being managed in the interest of all its stockholders, but for the benefit of other corporations, with which a person owning a majority of the stock of the company in question was connected, this court holds, that to sustain such a bill, the allegations should have been specific and definite in the charge of fraudulent mismanagement, so that the court could see that the charges are not the mere conclusion of the pleader.

[Opinion filed February 9, 1892.]

APPEAL from the Superior Court of Cook County; the Hon. HENRY M. SHEPARD, Judge, presiding.

The bill in this case sets forth that about October 8, 1883, there was organized a corporation known as the Pullman Iron & Steel Company, with a capital stock of $500,000, consisting of 5,000 shares of $100 each; that in payment for said stock, there was conveyed to the company a certain patent for making railway spikes; that afterward the owners of the stock, to whom the same had been issued, donated one-half of the same to the company, to be used as a working capital, and of

this treasury stock a portion was sold, in all about 1,625 shares, for which the company received $100,000, of which treasury stock the complainants, appellants, each purchased $5,000, which they have ever since owned; that the company thereafter erected works, including a rolling mill in Pullman, for the manufacture of spikes under said patent; that it was soon after found that the machinery purchased for the manufacture of spikes would not do the work, and their manufacture was substantially abandoned, and the principal business of the company became the manufacture and sale of bar iron; that there was invested in the company's plant about $116,000, which was $16,000 more than the money on hand. For the purpose of meeting this deficit and to provide a fund to operate the works, the company issued bonds to the amount of $100,000, securing the same by a mortgage upon all its property. Only $25,000 of the bonds were actually disposed of, for which the company received the sum of $25,000; that shortly-afterward the company commenced to borrow money from the Pullman Loan and Savings Bank, and so continued to do until it owed the bank about $56,500, and by resolution of the board of directors, in December, 1886, the remaining $75,000 of bonds were ordered to be delivered to the Pullman bank as security for its claim; that in September, 1885, the company owed the Pullman bank about the same amount it still owes, and its affairs being in a desperate condition, George M. Pullman caused the Pullman Palace Car Company to give the Pullman Iron & Steel Company a line of credit, whereby it was enabled to purchase materials and continue in operation, and that such state of affairs has continued up to this time, by virtue of which the Pullman Iron & Steel Company has been enabled to make large purchases of iron and other materials, and to build extensive additions to its works, whereby its indebtedness has been very largely increased.

That George M. Pullman, who is and has been from the beginning, the controlling stockholder of the Pullman Iron & Steel Company, is the president of the Pullman Palace Car Company and the president and principal stockholder of the Pullman Loan and Savings Bank, and that he has ordered and

directed the entire business of the Iron & Steel Company almost solely for the benefit of the Palace Car Company, and dictated the prices at which the Iron & Steel Company should furnish its produce to the car company, which prices were so low that little or no profit was realized; that the Iron & Steel Company would have realized large profits had it been allowed to manufacture bar iron and sell to the trade at ruling market prices, and that it would then have been enabled to discharge or largely reduce its indebtedness, but that it has not done so but is irretrievably and hopelessly insolvent, with liabilities in excess of $300,000, about $180,000 of which, it is claimed by its officers, is due to the Palace Car Company; that of the stock of the Pullman Iron & Steel Company, said George M. Pullman is the owner of 2,691 shares thereof; that the patent transferred to the company in ostensible payment of subscriptions to its capital stock is worthless, and has been abandoned by the company; that upon a fair accounting between the Iron & Steel Company and the Palace Car Company, based upon the actual market price of iron furnished, the alleged indebtedness to the Palace Car Company would be so reduced that complainant's stock would have some value which they desire to save for themselves.

That all of the officers of the Iron & Steel Company hold their positions entirely by direction of said George M. Pullman and subject to his absolute control, and that all of them are in the employment and pay of the Palace Car Company, none of said directors and officers having any pecuniary interest in the said Iron & Steel Company.

The bill prays that an accounting may be taken as between the Iron & Steel Company on one hand, and the Pullman Palace Car Company and the Pullman Loan and Savings Bank on the other, so that its exact indebtedness to each may be ascertained; that the corporation, the Pullman Iron & Steel Company, may be dissolved and a receiver appointed for it, its assets marshaled, and the liabilities of stockholders ascertained; that the equities of all parties may be adjusted, and that if after the payment of the liabilities any surplus remains, such surplus may be divided *pro rata* among the stockholders.

The Pullman Iron & Steel Company, the Pullman Loan and Savings Bank, the Pullman Palace Car Company, the officers and directors of the Pullman Iron & Steel Company, were made defendants. They appeared and filed a demurrer, which demurrer was sustained and the bill dismissed for want of equity.

Messrs. ULLMAN & HACKER, for appellants.

Messrs. JOHN S. RUNNELLS and WILLIAM BURRY, for appellees.

WATERMAN, P. J.    Briefly stated, the bill in this case seeks to take the management of the Pullman Iron & Steel Company out of the hands of a majority of the stockholders and of the officers and directors by them selected, to have a receiver appointed, an accounting had with its creditors, its affairs wound up and its assets distributed among its stockholders, upon the allegation that its affairs are not managed and have not been for its benefit and the benefit of its stockholders as a whole, but for the benefit of other corporations with which the person owning a majority of the stock of the Iron & Steel Company is connected.

The allegations are perhaps intended as a charge of fraudulent misconduct on the part of the officers and directors of the Iron & Steel Company; but as stated they do not amount to more than allegations of a want of business judgment and sagacity or a lack of attention. What is alleged is in substance that they have caused the Iron & Steel Company to sell its product at prices so low that little or no profit has been realized, and that it would have realized large profits had it been allowed to manufacture bar iron and sell the same to the trade at ruling market prices.

These allegations of stupid or fraudulent conduct on the part of the officers and directors of the Iron & Steel Company are altogether too general and indefinite to constitute the basis of a decree by a court of equity. The allegations are altogether conclusions on the part of the complainants. At what

prices the Iron & Steel Company has sold or furnished its product to the Car Company is not stated, neither is there any statement as to what amount of bar iron it has or could have manufactured and sold to other parties, nor at what price such bar iron could have been sold, or what the ruling market prices were; nor does it appear from the allegations of the bill whether George M. Pullman, who is charged to have been and to be the controlling stockholder of the Iron & Steel Company, has knowingly or intentionally caused that company to furnish its product to the Car Company at prices less than what its product could have been sold to the trade for, or whether such action upon his part has been through mere inadvertence, lack of proper judgment or a want of knowledge of what the ruling prices for such product were, and the prices at which such product could have been sold to the trade.

It may be entirely true that the course of the business of the Iron & Steel Company has been such that its work has been in its result as a profit almost solely for the benefit of the Palace Car Company, and yet such result have been brought about, not by any fraudulent conduct on the part of said George M. Pullman, by his or its officers intending to control the Iron & Steel Company so that its operations should not be for its benefit, but should be for the benefit of the Palace Car Company; but that such unfortunate result, so far as the Iron & Steel Company is concerned, has been brought about simply by his and their lack of knowledge of the ruling market prices or his lack of business judgment or sagacity, shown by their failing to sell the product of the Iron & Steel Company at the ruling market prices.

If the conclusions of the complainants, set forth by this bill, are based upon actual facts, no reason is shown for not stating such facts so that the court, by an inspection of the bill, could have seen that the Iron & Steel Company had been selling its product, not merely at prices so low that little or no profit was realized, which is a very common thing, both with individuals and corporations, but had sold its product at prices materially below the ruling market prices for such goods.

If the allegations of the bill as to its indebtedness and the

value of its assets are true, then it would seem that its creditors have a much greater interest in its management than these complainants can possibly have. None of these creditors, whose claims aggregate more than $300,000, are making any complaint as to the management of the company. It does not appear that any judgment has ever been obtained against it, or that it is not promptly meeting all its bills. It is doing a large business and lessening its liabilities. It is quite apparent that to take, under such circumstances, the control of its affairs out of the hands of a majority of its stockholders and put it in charge of a receiver might greatly jeopardize the interests of its creditors and result in a large loss to them.

While it is true that the complainants represent but one hundred out of 5,000 shares, yet it is their right to have the affairs of the corporation honestly administered for the benefit of its stockholders, and if they are being intentionally not so administered, they are entitled to relief in a court of equity; but in asking for such relief they should so specifically set forth the acts of mismanagement, which, if taken as they desire to have them taken, amount to charges of fraud, that the court can see from a reading of the bill that if the matters and things therein specifically set up are true, its affairs are, by its officers and directors, intentionally and fraudulently mismanaged, and that the allegations of fraudulent mismanagement are not mere conclusions of the pleader.

Whether, in the case of a corporation doing business, meeting all demands against it promptly, not charged to have done any acts for which its charter might be forfeited, a receiver will, at the instance of stockholders, be appointed and the corporation wound up, upon charges of fraudulent mismanagement, or whether in such case the court, declining to appoint a receiver, will compel the officers of the company to account for their breach of trust and enjoin the doing of such further fraudulent acts, are questions which under the allegations of this bill we are not called upon to discuss.

The decree of the Superior Court dismissing the bill is affirmed.

*Decree affirmed.*