## W. E. Sprague et al. v. The Universal Voting Machine Company et al.

1. CORPORATIONS—*to what extent courts will not supervise.* Courts will not interefere with the management of the internal affairs of a foreign corporation doing business in this state, notwithstanding such corporation has a large amount of visible tangible property in the state.

2. CORPORATIONS—*status of foreign, in Illinois.* The mere fact that a foreign corporation is licensed to do business in this state does not make it either a citizen of this state or a corporation of this state.

Bill for injunction, etc. Appeal from the Circuit Court of McLean county; the Hon. COLOSTIN D. MYERS, Judge, presiding. Heard in this court at the November term, 1906. Affirmed. Opinion filed June 1, 1907.

STONE & OGLEVEE, for appellants.

BARRY & MORRISSEY, for appellees.

MR. JUSTICE PUTERBAUGH delivered the opinion of the court.

The chancellor in the Circuit Court sustained a general demurrer to a bill filed by certain stockholders in the Universal Voting Machine Company against said corporation and its officers. A decree was entered dismissing the bill for want of jurisdiction of the subject-matter. To reverse such decree, this appeal is prosecuted by the complainants.

The bill charges that the defendant, The Universal Voting Machine Company (hereinafter for brevity designated as the "Universal Company") is a Maine corporation; that it is admitted to do business in the state of Illinois, with offices in the city of Bloomington, Illinois; that its capital stock is $500,000; that all of the property of said corporation is located in the state of Illinois and all of its officers live there; that complainants are stockholders, and sue in behalf of themselves and all other stockholders who may choose to join; that they own 270 shares of stock in said company of the par value of $27,000; that the officers and majority stockholders have fraudulently contrived to wreck the said company, and to transfer all its property to the defendant, The Moline Voting Machine Company (hereinafter for brevity designated as the "Moline Company"), and that said officers and stockholders of the said Universal Company are also officers and stockholders in the Moline Company, to whom said transfer is sought to be made; that as a part of this plan to wreck the Universal Company, the said officers and majority stockholders voted $100,-000 bonds, and gave a trust deed of all the property of said Universal Company to secure the same, and then issued them to themselves for their own stock in the said Universal Company, thereby giving said officers

and stockholders a lien upon the property of said company in fraud of the rights of these complainants and other minority stockholders who received .no bonds; that this bond issue was made without the consent of these complainants, and was *ultra vires;* that, later, to wit, June 5, 1906, the said officers and majority stockholders transferred all the bonds of the said Universal Company so held by them to the Moline Company for shares of stock in said Moline Company, so that these said officers and majority stockholders aforesaid have now no stock or other interest in said Universal Company.   That on June 10, 1906, these same officers and stockholders aforesaid, notwithstanding they had so transferred all their interest in the Universal Company to the said Moline Company for stock therein, attempted to transfer by bill of sale all of the property, patents, etc., of the Universal Company to the Moline Company for stock in said company, issued to themselves and to be issued to these complainants and other dissenting stockholders; that a few days later the defendant, H. W. Barr, who was vice-president and general manager of the Universal Company, and secretary of the Moline Company, removed all the property, patents, books, etc., of the said Universal Company from the offices and business quarters in Bloomington, Illinois, to Moline, Illinois, and turned them over to the Moline Company in pursuance of said pretended bill of sale aforesaid, and that since that time the said Universal Company has not been able to carry on any business whatever, and that the only action taken by the stockholders, or any of them, was the resolution of the informal stockholders' meeting; that complainants have made demand for an inspection of the books of said Universal Company, which demand has been refused; that there has been no statement of the business of said company for more than a year past; and, finally, that all of the foregoing facts were known by defendant, the Moline Company, from the beginning.   The

prayer of the bill is that the fraudulent issue of bonds be cancelled except in so far as they have been paid for in money and in good faith; that said pretended bill of sale be declared null and void and the same delivered up and cancelled; that the Moline Company be perpetually enjoined from foreclosing the said deed of trust hereinabove set forth; that the officers having charge of the money or property be required to account, and that a temporary receiver be appointed to collect and preserve the assets of the company until it is again put in operation or proper steps have been taken to dissolve it.

A number of grounds are assigned in support of the action of the chancellor in sustaining the demurrer and dismissing the bill, of which we deem it necessary to consider but one, that is, that the courts will not interfere with the management of the internal affairs of a foreign corporation. That such is the law and that questions of that character are to be settled by the tribunals of the state which created the corporation, is established by the following, among other authorities: Bradbury v. W. & W. M. & S. Co., 113 Ill. App. 600; Madden v. Penn. E. L. Co., 181 Pa. St. 617; McCloskey v. Snowden, 212 Pa. St. 249; N. S. C. & G. Co. v. Field, 64 Md. 154; Kimball v. St. L. & S. F. R. R.; 157 Mass. 7; Condon v. M. R. F. L. Ass'n, 44 L. R. A. (Md.) 149; Howard v. M. R. F. L. Ass'n, 45 L. R. A. (N. C.) 853; Taylor v. M. R. F. L. Ass'n, 45 L. R. A. (Va.) 621.

And the rule applies even though the corporation has a large amount of visible, tangible property within the state. Madden v. P. E. L. Co., *supra;* McCloskey v. Snowden, *supra.* A well-considered case upon the subject is that of Bradbury v. W. & W. & M. & S. Co., *supra,* where the averments of the bill dismissed and the relief asked are substantially similar to the averments and prayer of the present bill.

What controversies relate to the internal management of the corporation is clearly and well defined

in North State C. & G. M. Co. v. Field, 64 Md. 154, where it is said: "where the act complained of affects the complainant solely in his capacity as a member of the corporation, whether it be as stockholder, director, president, or other officer, and is the act of the corporation, whether acting in stockholders' meeting or through its agents, the board of directors, then such action is the management of the internal affairs of the corporation and in case of a foreign corporation, our courts will not take jurisdiction." Madden v. Penn. E. L. Co.; McCloskey v. Snowden; Condon v. M. R. F. L. Ass'n; Howard v. M. R. F. L. Ass'n; Taylor v. M. R. F. L. Ass'n; Bradbury v. W. & W. M. & S. Co., all *supra*.

Counsel for appellant contend that the foregoing rule is not applicable in the present case for the reason that the Universal Company is licensed to and is doing business in this state by virtue of a statute thereof, and that under such statute it is subject to the laws of the state, to the same extent as a domestic corporation; that under the law of Illinois, a sale of all the property of a corporation in return for stock in another corporation is *ultra vires*.

Statutes of a state granting to a foreign corporation the privilege of doing business within the state do not make such foreign corporation a citizen or corporation of such state. Clark v. Ass'n, *supra;* Pa. R. Co. v. St. L. & P. R. Co., 118 U. S. 290.

It will be unnecessary to determine whether or not an exception to the general rule exists where, as here, all the property of the corporation is within the state, its officers reside here, and the act sought to be restrained is claimed to be *ultra vires;* for the reason that we are not advised by the bill as to the powers conferred nor the restrictions imposed upon the Universal Company and its officers by its charter and the laws of the state of Maine under and by virtue of which such corporation was organized and from which it derives its powers. We cannot, therefore,

well determine whether or not, under the laws of Maine, the acts of the appellees complained of amounted to a sale of the property of the corporation, or to a consolidation of the same with the Moline Company; whether under such laws said transaction was within the powers of corporations organized thereunder, nor whether the authorization of such action by a meeting of the stockholders was essential; nor what constituted a legal meeting of the stockholders, nor whether the consent of all stockholders was requisite.

In Harding v. American Glucose Co., 182 Ill. 551, cited by counsel for appellant, the bill alleged and the evidence showed that the defendant corporation owned a plant consisting of real estate, buildings, machinery and fixtures which were situated within the state of Illinois, that it and five other corporations engaged in the same business were about to transfer all their properties to a new corporation to be created, which was to take and use all the plants of the six old corporations, thus forming a trust or combination for the purpose of regulating, fixing, controlling and maintaining the prices of glucose and grape sugar, of suppressing competition in the manufacture thereof, and of creating a monopoly therein, to the injury of the consumers of the manufactured product, and of the public generally. It was sought by the proceeding, among other things, to restrain the transfer or sale of the plant in question in pursuance of said plan. The court held that the public policy of the state of Illinois has always been against trusts and combinations organized for the purpose of suppressing competition and creating monopoly; that foreign corporations coming into the state of Illinois are subject to the same restrictions and duties as corporations formed therein, and have no other or greater powers; and further, that the courts have power to restrain a foreign corporation from transferring its property within the state, consisting largely of real estate, to another foreign corporation, in violation of the laws of Illinois relative

to trusts and combinations, and contrary to its public policy, and that where the wrongdoers comprise the officers and a majority of the stockholders of the former corporation, any stockholder dissenting may, on behalf of himself and other stockholders, maintain a bill for that purpose. See, also, Dunbar v. Telegraph Co., 224 Ill. 9.

The acts complained of in the bill under consideration, do not appear to have been performed in furtherance of any illegal trust or combination, nor to be contrary to the general public policy of the state of Illinois, nor is any real estate sought to be transferred. To grant the relief prayed would be clearly an interference with the internal management of a foreign corporation.

The action of the Circuit Court was proper and the decree is affirmed.

*Affirmed.*