FOURTH DISTRICT—NOVEMBER, 1910.     587

Heitkamp v. American Pigment & Chemical Co., 158 Ill. App. 587.

## B. Joseph Heitkamp et al., Appellants, v. American Pigment & Chemical Company et al., Appellees.

1. CORPORATIONS—*jurisdiction of chancery to dissolve.* A court of chancery has no jurisdiction to declare a forfeiture and to decree the dissolution of a corporation and the sale and distribution of its property and to appoint a receiver pending such proceedings except that given by section 25 of the Corporation Act.

2. CORPORATIONS—*section 25 of act construed.* Section 25 of the Corporation Act conferring power upon courts of chancery to dissolve a corporation for "good cause shown" signifies a legal cause, such a one as the sovereign authority might by law resume the franchise granted.

3. CORPORATIONS—*jurisdiction of chancery to grant relief to minority stockholders.* A court of chancery upon a proper showing has jurisdiction to grant relief to minority stockholders in case of fraudulent conduct by officers, directors or stockholders.

4. CORPORATIONS—*what bill by minority stockholder for appointment of receiver must allege.* Where a bill by a minority stockholder for the appointment of a receiver is based on any particular ground the facts should be specifically set forth; the allegations should also be positive and definite in charging fraud or fraudulent mismanagement so that the court can say that the charges are not the mere conclusions of the pleader.

5. CORPORATIONS—*when appointment of receiver improper.* The appointment of a receiver to take possession and control of corporate property is improper where the bill fails to show any equitable jurisdiction to granting the primary relief sought.

6. CORPORATIONS—*how power to appoint receivers exercised.* Courts hesitate to throw corporations into the hands of receivers and proceed with extreme caution in the appointment of receivers and will refuse the appointment in cases where it is not clearly shown that the appointment will be beneficial to the parties in interest.

7. CORPORATIONS—*how right to examine records, etc., enforced.* A stockholder has a right under the law to examine the records and books of account of a corporation, but such right is enforceable by mandamus rather than by injunction.

8. CORPORATIONS—*rule as to interference by courts with foreign.* The general rule is that courts of one state will not interfere in controversies relating merely to the internal management of the affairs of a foreign corporation at the suit of a stockholder, and will refuse to appoint a receiver or dissolve the corporation or divide its assets among its shareholders.

9. CHANCERY—*how question of jurisdiction raised.* All matters which go to the jurisdiction of a court of chancery may be taken

advantage of by demurrer whether specially pointed out in the demurrer or not.

Bill in chancery. Appeal from the Circuit Court of Madison county; the Hon. GEORGE A. CROW, Judge, presiding. Heard in this court at the March term, 1910. Affirmed. Opinion filed November 12, 1910. *Certiorari* denied by Supreme Court (making opinion final).

**Statement by the Court.** B. Heitkamp· and forty-three others as stockholders in the American Pigment and Chemical Company, a corporation organized and chartered in the Territory of Arizona for the purpose of manufacturing pigment and chemical products from barium, zinc, lead and other metals, filed a bill in chancery in the Circuit Court against said corporation and William J. Armbruster, promoter and stockholder in said corporation, for the purpose of "winding up" and determining the business of said corporation in Illinois, and for appointing a receiver and selling its property and distributing the proceeds thereof to the stockholders according to the provisions of its charter. The bill also prays for an accounting and for an injunction against Armbruster. A demurrer was sustained to the bill by the lower court and the same was dismissed. Complainants appealed.

It is averred in the bill that the authorized capital stock of said company is $600,000, divided into 6,000 shares of the par value of $100 each; that 600 of said shares are known as Class "A" preferred 8%; 600, as Class "B" preferred 8%; and 4800, as Common; that the combined stock of complainants in said corporation is 401 shares of Class "A" preferred, 401 shares of Class "B" preferred, and 363 shares of Common stock, for which they paid over $40,000; that in consideration for certain patents held by said Armbruster for the combining and manufacturing said chemical products and his knowledge and experience as a chemist, etc., said Armbruster was given 4,300 shares of Common stock and the 600 shares of Class "B" preferred; that as an inducement to complainants and

others to purchase stock, for each share of Class "A" preferred stock purchased at $100, Armbruster gave one share of Class "B" preferred to the purchasers; that by such sales of stock $60,000 in cash was paid into the treasury of the corporation, and eleven acres of land near East Alton, Illinois, was purchased by the corporation on which was erected a plant consisting of a two story building equipped with machinery supposed to be of the proper kind necessary for the manufacture and sale of the pigment and products aforesaid.   It is further averred that by reason of certain false representations made by Armbruster in a certain prospectus, complainants became stockholders as aforesaid; that Armbruster obtained the charter of the defendant corporation, January 16, 1906, in the Territory of Arizona for the manufacture of said products; that said plant is all the property now owned by the corporation; and that it could not be sold for more than $25,000, and that it has no property in the Territory of Arizona.

E. M. GROSSMAN and WISE, KEEFE & WHEELER, for appellants.

WEBB & WEBB, for appellees; JAMES T. ROBERTS, of counsel.

MR. JUSTICE DUNCAN delivered the opinion of the court.

After reading the bill carefully we find nowhere in it the necessary averments to give a court of chancery in this state jurisdiction to declare a forfeiture and to decree the dissolution of the corporation and the sale and distribution of its property and to appoint a receiver pending such proceedings.  A court of chancery has no such jurisdiction in this state, except that given by section 25 of our Act relating to corporations, and this bill does not allege or set out any facts showing

590     APPELLATE COURTS OF ILLINOIS.

Heitkamp v. American Pigment & Chemical Co., 158 Ill. App. 587.

the existence of any of the causes named in the statute. It is not claimed that the corporation has done anything to subject it to a forfeiture of its charter or corporate powers; and the "good cause shown to dissolve or close up the business of a corporation and to appoint a receiver therefor," as mentioned in the statute, signifies a legal cause, such a one as the sovereign authority might by law resume the franchise granted. Wheeler v. Pullman I. and S. Co., 143 Ill. 197; Hunt v. The LeGrand R. S. R. Co., 143 Ill. 118.

It is not claimed, however, by the complainants that they are entitled to any relief under the statute; but that their prayer for relief can be granted, and must be granted, by reason of the general powers of a court of equity to grant relief to minority stockholders in certain cases for the fraudulent conduct of its officers, or its other stockholders and officers. We concede that in a proper case a minority stockholder may have a remedy in a court of equity, and that independent of our statute there are instances in which equity jurisdiction is clearly recognized by the courts of this country and in England. In the case of Wheeler v. Pullman I. and S. Co., 143 Ill. at page 207, our Supreme Court says: "It seems to be well settled that if the agents of the corporation, in whom the authority to control its affairs is vested, are themselves guilty of wrong against the corporation, either by personal conversion of its funds, or being interested in another corporation or business, fraudulently manage the affairs of the corporation to its detriment and for the benefit of such other corporation or concern, a court of equity will, upon a proper bill filed, interfere, at the suit of a stockholder, to protect his interest in the corporation, without requiring him to first request or demand that the guilty agents proceed, virtually, against themselves," citing authorities. "It is, however, fundamental in the law of corporations, that the majority of its stockholders shall control the policy of

the corporation, and regulate and govern the lawful exercise of its franchise and business.''

To the same effect are many other authorities, notably Hawes v. Oakland, 104 U. S. 450, where it is said: ''We understand that doctrine to be that to enable a stockholder in a corporation to sustain in a court of equity in his own name, a suit founded on a right of action existing in the corporation itself, and in which the corporation is the appropriate plaintiff, there must exist as the foundation of the suit—some action, or threatened action of the managing board of directors or trustees of the corporation which is beyond the authority conferred on them by their charter or other source of organization; or such fraudulent transaction completed or contemplated by the acting managers, in connection with some other party or among themselves, or with other share holders as will result in serious injury to the corporation, or to the interests of other share holders; or where the board of directors, or a majority of them, are acting for their own interests, in a manner destructive of the corporation itself, or of the rights of the other share holders; or where the majority of share holders themselves are oppressively and illegally pursuing a course in the name of the corporation, which is in violation of the rights of the other share holders, and which can only be restrained by the aid of a court of equity. Possibly other cases may arise in which, to prevent irremediable injury, or a total failure of justice, the court would be justified in exercising its powers, but the foregoing may be regarded as an outline of the principles which govern this class of cases.  *  *  * He must make an earnest, not a simulated effort, with the managing body of the corporation, to induce remedial action on their part, and this must be made apparent to the court.''

Where the bill for the appointment of a receiver is based upon any particular ground the facts should be specifically set forth. The allegations should also be

positive and definite in charging fraud or fraudulent mismanagement, so that the court can see that the charges are not the mere conclusions of the pleader. Wheeler v. Pullman I. and S. Co., 43 Ill. App. 626; The Smith-Dimmick L. Co. v. Teague, Barnett & Co., 119 Ala. 385; Bradbury v. Waukegan and W. M. and S. Co., 113 Ill. App. 600.

Turning again to this bill we find that the elementary rules of pleading as set forth in the foregoing authorities are so essentially and persistently violated all through this bill as to make it necessarily demurrable, even if we treat the corporation as an Illinois corporation, or concede that the same rules apply to it as if it was such. Nearly the whole of complainants' argument is taken up in showing that there are some foreign corporations doing business in this state with property here, that our courts may under certain circumstances deal with at the suit of a stockholder; but little, if any, of the argument is devoted to showing why, or on what grounds this bill should be sustained. We gather from the bill and argument together that the whole complaint as to fraud in this bill is leveled at Armbruster. The prayer of the bill as against Armbruster is, "that the said Armbruster may be enjoined from drawing or paying to himself any salary until the further order of this court; that he be further enjoined from paying out or expending any money of said corporation, or in any way encumbering the property of the said corporation, or creating any obligations against the same," and that "as against the value of any stock which the said Armbruster may hold, he be held to account for all moneys received by him and not expended in necessary and proper expenses of the management of such corporation." It is nowhere averred in this bill that Armbruster ever appropriated a dollar of the corporation's money to his individual use or misappropriated it to any one else. It is not averred that he is not entitled to, and does not earn, his salary as manager, in terms that the court can see

that he is not entitled to it. There are charges in the bill to the effect that he squandered the money of the corporation, and that he so mismanaged it that it paid no dividends, that it borrowed money and should not have done so under good management, and that he violated the charter, but we are not advised in the bill in what particulars he did so. The allegations of such charges are couched in general statements of mere conclusions of the pleader without giving any facts whatever that the court may understand or know what acts are complained of as being fraudulent. The most formidable charges in the bill are to the effect that by fraudulent statements in his prospectus and by other false statements, Armbruster induced complainants to purchase their stock, and to allow him to have the stock that was given him; but the bill does not ask for the rescission or cancellation of any of the stock, but treats it all as valid and subsisting holdings. The substance of the real charges for which a dissolution and an accounting of and the appointment of a receiver are asked, is as follows: That after payments were made and the plant was completed, Armbruster continued and now is sole manager, and that the corporation has never paid any dividends; that as "your orators are informed and believe, it never performed the conditions and duties enjoined upon it by its charter and by-law;" that Armbruster has failed to execute a bond, although he handles the money, and by his shares of stock has controlled and manipulated the election of directors who would co-operate with him and permit him to control and do everything he desired to do, and refuses subscribers of the preferred stock to choose any officers, and refuses to let complainants have any knowledge of such management; that he and said corporation refused complainants the right to inspect the books, or to have statements, concerning the debts and moneys on hand, and that no directors were elected for the year 1909; that because complainants tried to gain

some knowledge of its affairs and to be represented on its board of directors to protect their interests, Armbruster pretended to become offended, and "by his acts and conduct, as well as his declarations, indicated that he intended, so far as he could, to make the stock of your orators valueless;" that although he and the corporation have had $60,000 from sale of preferred stock and $25,000 from sale of common stock and $7,500 borrowed by pledging the property by passing "pretended resolutions," no dividends have been paid and no profits have been made; that the property, "by fraud and mismanagement and connivance of Armbruster, as manager, has been so depleted and reduced in value that if it were cashed it would not pay 30% on the value of complainants' stock;" that if he is allowed to further control it, it will be of no value whatever, that further indebtedness will be created by fraud and connivance of Armbruster and his board of directors, pretended claims against the corporation will be reduced to judgments and said property wholly absorbed; that "Armbruster has been receiving a salary of $125 per month, as manager, which he causes to be paid to himself from the funds of said company, which he unlawfully and fraudulently handles without any right or authority."

The bill really discloses on its face that the complainants know little or nothing about the real financial condition of the corporation, and that the funds held by Armbruster are held as an officer of the corporation. It is not sufficient to say that he acts fraudulently or that he squanders the funds, or that he misappropriates them, or that he will do so; but the real facts that he has done, if any, or that he is threatening to do, if any, should be averred so that the court may see if the conclusions of the pleader are warranted.

The bill shows no equitable grounds for an accounting against Armbruster for want of proper averments of ultimate facts showing some real fraud or wrong against the complainants by way of withholding or

misappropriating funds. If he is acting without a bond contrary to the by-laws and complainants' rights and to their detriment, facts should be averred show-ing it, and that they are powerless to remedy it through the board of directors.

The bill failing to show any equitable jurisdiction in a court of chancery to grant any of the primary re-lief prayed in the bill, as the appointment of a re-ceiver was to be a mere incident to that relief, the court had no power or authority under the bill to ap-point a receiver and authorize him to take posses-sion and control of the corporation property. The People v. Weigley, 155 Ill. 491.

All matters which go to the jurisdiction of the chan-cery court may be taken advantage of by demurrer, whether specially pointed out in the demurrer or not. Wetherell v. Eberle, 123 Ill. 666.

Courts hesitate to throw corporations into the hands of receivers, and proceed with extreme caution in the appointment of receivers, and will refuse the appoint-ment in cases where it is not clearly shown that the appointment will be beneficial to the parties in interest. 5 Thompson on Corporations, 2nd Ed., Sec. 6334.

There was no valid right or reason shown why an injunction should issue in this case for the reasons above shown. The complainants had a right under the law to examine the records and books of account of the corporation as stockholders, and could enforce it by mandamus. Coquard v. Nat. L. O. Co., 171 Ill. 480.

The general rule is that the courts of one state will not interfere in controversies relating merely to the internal management of the affairs of a foreign cor-poration at the suit of a stockholder, and will refuse to appoint a receiver or dissolve the corporation or divide its assets among its shareholders. North State C. and G. M. Co. v. Field, 64 Md. 151; Sidway v. Mo. L. & L. Co., 101 Fed. R. 481; 6 Thompson on Corpora-

tions, 1st Ed., Sec. 7904; Tuttle v. Bank, 161 Ill. 497; Sprague v. Voting Machine Co., 134 Ill. App. 379.

The decree of the court sustaining the demurrer and dismissing complainants' bill is right and it is affirmed.

*Affirmed.*