## John Clifford et al., Appellees, v. George F. Hedrick et al., Appellants.

### Gen. No. 16,559.

1. CORPORATIONS—*when equity will not interfere in management.* Courts of equity in this state will not take cognizance of, and interfere with, the internal management and disciplinary methods of a foreign corporation or voluntary association where no property right appears to be involved.

2. CORPORATIONS—*when act requiring foreign, to be licensed, has no application.* The act which requires foreign corporations to obtain a license to authorize them to do business in this state, has no application in a case where relief is sought against such corporation.

Bill for injunction. Appeal from the Superior Court of Cook county; the Hon. ARTHUR H. CHETLAIN, Judge, presiding. Heard in this court at the March term, 1910. Interlocutory orders reversed. Opinion filed December 1, 1910.

**Statement by the Court.** This is an appeal from an interlocutory order granting an injunction and also from an order refusing to dissolve.

The injunction restrains the defendants, who are directors and constitute the General Executive Board of The Brotherhood of Painters, Decorators and Paperhangers of America—a trade union incorporated under the laws of the State of Indiana, December 7, 1894—

(a) "from revoking or attempting to revoke the charters of Local Unions Numbers 194, 275, 180, 54, 637 and 584 of the Brotherhood of Painters, Decorators & Paperhangers of America;

(b) "from representing themselves or holding themselves forth as Scandinavian Painters, Decorators & Paperhangers Union No. 194 of the Brotherhood of Painters, Decorators & Paperhangers of America, or holding themselves forth or representing themselves as Local Unions Numbers 194, 275, 180, 54, 273, 637 and 584;

(c) "from revoking or attempting to revoke or

cancel the working cards of the members of said Local Unions,

(d) "or interfering with or attempting to take possession of any of the moneys, funds or other property of said locals,

(e) "or aid or abet, or attempt to aid or abet or combine to prevent the said members from obtaining work and employment,

(f) "from threatening, harassing or annoying said members of said locals,

(g) "from all acts interfering with the objects and purposes of said locals and their members."

It appears from the bill that prior to February 5, 1910, there were in Chicago seventeen local unions of the Brotherhood, all of them organized under the powers conferred upon the corporation by its charter, under the provisions of which the members of these subordinate local unions became "full members of this Association upon the terms and conditions prescribed by the constitution and by-laws." These local unions in accordance with the constitution of the Brotherhood were required to be connected with a District Council composed of delegates from all these local unions, known as the Painters District Council No. 3 of the Brotherhood. In 1909 a controversy arose between certain of these local unions over offices and control in said District Council. As a result several of the local unions withdrew their delegates and seceded from the District Council. This action subjected such locals to a revocation of their charters by the District Council under a provision of the Brotherhood constitution. Appeals from such action were taken to the General Executive Board of the Brotherhood by the seceding locals and also by the District Council. This executive board heard both appeals and in some respects sustained the local unions, but refused to dissolve the Council as urged by the aggrieved locals. It sustained the Council in its objection to the secession of these locals and ordered the latter to return their delegates

who had been withdrawn therefrom to the Council. A further appeal was taken by the locals to the General Assembly of the Brotherhood and the action of the General Executive Board was sustained. Thereupon the said Executive Board officially ordered the seceding locals to return their delegates to the Council by February 3, 1910, upon pain of having their charters revoked in case of disobedience of the order. Six of the locals refused obedience to the order and thereupon the General Executive Board revoked their charters, and directed the respective Treasurers of these six locals to forward the books, papers and moneys in their possession to the General Secretary-Treasurer of the parent body, in accordance it is claimed with the provisions of the constitution of the order. Thereafter on the 10th of February, 1910, the bill in this case was filed.

The bill is exhibited by seven complainants who allege they are members in good standing of the Brotherhood, but do not specifically allege that they are members of any of the seceding local unions. They state that defendants have threatened to revoke the membership cards of members of said locals as well as the charters of said unions. The defendants are respectively the President, Vice President, Secretary, Treasurer, members of the Executive Board of the Brotherhood and persons described as "agents and servants of said defendants herein named." It is alleged that the Brotherhood is affiliated with the American Federation of Labor, an organization composed of various international labor organizations of America, which has an affiliated membership of about two million members; that in accordance with a resolution . of said American Federation of Labor adopted in a convention held in 1907 at Denver, and a provision made for that purpose, the Chicago Federation of Labor has organized a sub-department known as the Building Trades Department of the Federation of Labor, and that at a convention of the local unions composing the

Brotherhood, there was adopted a resolution providing for and directing the local unions of the Brotherhood "to affiliate with the building trades department of the American Federation of Labor." It is further averred that prior to said convention there existed in Chicago said Painters District Council, which was the central body to which the various local unions in Cook county sent their delegates and that there were seventeen locals of the Brotherhood so affiliated with said Council; but that after said action by the American Federation of Labor and the national convention of the Brotherhood, certain local unions of the Brotherhood withdrew their delegates from said Painters District Council and were directed by their membership to affiliate with the Building Trades Department of the American Federation of Labor, which they did. The local unions so withdrawing from the Painters District Council were Local Union No. 194, having a membership of about 2,000; Local Union No. 275, with a membership of about 1,300; No. 180, with about 600; No. 54, with about 200; No. 273, with about 200; No. 637, with about 205; No. 584, with about 75; making a total membership of 4,580. It is stated that certain local unions dominated by one Martin B. Madden, with a membership of about 2,000 members, have not complied with the laws of the American Federation of Labor or are still affiliated with said alleged Painters District Council.

The bill further alleges that the officers of said Council have received large sums of money from fees and other sources, paid in by members of the Brotherhood, for which they have failed to account, and complainants pray that an accounting of and for such moneys may be taken.

It is set forth in detail that members in good standing of the Brotherhood under the constitution of the Brotherhood are entitled to certain death benefits, to participate in the fund created for death and disability benefits, and have paid their dues into the Brother-

hood upon that assurance. It is alleged the bill is exhibited in behalf of the great majority of the painters, decorators and paperhangers of Chicago and vicinity affiliated with said Brotherhood, and that these cannot secure employment without a working card certifying to their standing in said Brotherhood; that said local unions above mentioned have established sick benefit funds, separate and apart from the general dues and other charges payable to the general organization, and that said sick benefit fund in said locals amounts to about $1,500, in which fund petitioners and other members in whose behalf the bill is exhibited have an undivided interest under the by-laws of said respective local unions in case of sickness, disability or distress, and that said locals are obligated by their by-laws to pay such sick benefits from the sick fund or general fund of said local unions.

It is further averred that said local unions have established a general fund from dues, assessments and other sources of income, which fund does not belong to and is not under the control of the Brotherhood, but is subject to the disposal of said local unions, who use it to assist disabled, distressed, sick and delinquent members, and that said general fund amounts to about $20,000, in which complainants and their associate members have an undivided interest.

Complainants aver that the defendants herein have wrongfully and illegally conspired to wreck and destroy the local unions above mentioned and that they claim the right to revoke the charters of the latter and take possession of their property and funds in violation of the constitution and laws of the Brotherhood to revoke the membership cards of members of said local unions and compel them to join other organizations and surrender all their right, title and interest. in and to the said general and sick benefit funds.

It is charged that the defendants have wrongfully combined and confederated together to oppose the resolutions of the American Federation of Labor and

of the general convention of the Brotherhood and the Building Trades Department of the American Federation of Labor and to compel said local unions to refrain from conforming to said resolutions, that said conduct is illegal and unlawful and will result in irreparable injury and loss to the members of said local unions; that said defendants have demanded and attempted to revoke the membership cards of the members and the charters of said local unions, which purpose is unlawful and if carried out will result in irreparable loss and injury to petitioners and other members of said locals. It is averred that the Brotherhood has no right, claim or interest in and to said sick benefit and other funds.

It is further averred that local Union 194 is known under the name of Scandinavian Painters & Decorators Union No. 194 of said Brotherhood, and is located in Chicago; that it has been in existence over fourteen years and has a membership of about two thousand members, and that certain of the defendants are attempting to organize and create a new organization with the same name and number, which if done will cause irreparable injury, create great confusion in the delivery of mail and prevent the said regular Scandinavian Painters and Decorators Union from receiving mail and communications intended for it.

Complainants represent that there is no power or authority in the constitution of the said Brotherhood authorizing or permitting the general Executive Board to revoke the charter of any subordinate local; but that nevertheless the defendants purporting to act as the general Executive Board of said Brotherhood in opposition to and in conflict with the laws of the American Federation of Labor and the resolution of the National Convention of the Brotherhood of the Building Trades Department of the American Federation of Labor in Chicago, propose and are attempting and threaten to revoke the charters of the said locals before mentioned, and to organize other local unions

with the same names and numbers. There are other averments which it is we think unnecessary to set forth in detail.

The answer denies that defendants ever attempted to revoke membership cards, but admits that the general Executive Board did revoke on February 5th the charters of said locals and directed that members thereof if they desired to preserve their beneficial standing could do so by transferring to any of the local unions affiliated with the District Council of Chicago. This action it is claimed by defendants while it revoked the authority under which the aggrieved locals acted, did not destroy nor interfere with the rights of their members as members of the Brotherhood. It is admitted that the Brotherhood is a corporation and a Trade Union with, it is said, seventy thousand members; that at its general convention in Cincinnati in December, 1909, a resolution was adopted providing for an amendment to the constitution of the Brotherhood whereby local unions shall affiliate with the Building Trades Department of the Federation of Labor, but it is averred that this amendment is not yet in force and will not be until adopted by a vote of the Brotherhood, which will not be acted upon until later in the present year; that the said aggrieved local unions in whose behalf the bill of complaint is filed withdrew their delegates from the Painters District Council and affiliated with the Building Trades Department of the American Federation of Labor prior to the meeting of the general convention of the Brotherhood at Cincinnati and prior to the adoption of the resolution providing for submission to the Brotherhood of the amendment; and that they had no power to do this before the confirmation by referendum of the proposed amendment. The answer admits that the local unions in question have established sick benefit funds separate from their general dues to the probable amount of $1,500, but deny that petitioners and other members of said local unions have an undivided

right in said fund, and show that by the constitution
of the Brotherhood, while complainants have a bene-
ficial interest in said fund, the fund is required to be
forwarded to the general Secretary-Treasurer of the
Brotherhood because on February 5th the general
Executive Board by virtue of the power vested in it
by the constitution and charter of the Brotherhood
revoked the charters of said local unions, for the rea-
son these latter had seceded from the Painters Dis-
trict Council of Chicago. Defendants state that upon
such secession the general Executive Board had no
discretion in the matter but were compelled by the
constitution and by-laws to revoke the charters of
such local unions so seceding from said District Coun-
cil. A copy of the constitution of the Brotherhood
is submitted and seems to justify in substance the
defendants' contention. Section 173 provides as fol-
lows: "All local unions within the jurisdiction of a
District Council must be represented in and shall be
governed by the rules of said Council. Refusal to be
represented in and remain in the same except for
a grievance sustained by the General Executive Board
shall be penalized by revocation of charter."

BULKLEY, GRAY & MORE, for appellant.

STEDMAN, SOELKE & SHUTAN, for appellees.

MR. PRESIDING JUSTICE FREEMAN delivered the opin-
ion of the court.

It is not possible within appropriate limits to set
forth the provisions of the constitution of the Brother-
hood nor all the facts which in our judgment support
the action of the general Executive Board and tend
to show that the complainants were not entitled to the
interlocutory order appealed from under the showing
made by the respective parties. We are of opinion
that the constitution and by-laws of the Brotherhood
of which complainants are members control the gov-

ernment and administration of its affairs.   It is a foreign corporation, a voluntary association of the internal management and discipline of which a court of equity will not take cognizance where no property rights are involved.   The complainants do not show that they have any vested right or title to the moneys or property of the local unions in question.   It does not appear that the authorities of the Brotherhood have exceeded or abused the powers vested in them by the constitution of the order.

The complainants have failed to show any sufficient reason for disobeying the constituted authorities of the order.   Neither the Brotherhood itself nor the general Executive Board are by the bill made parties defendant.   The bill merely seeks to restrain members of that board as individuals from performing the duties of their offices as officials of the Brotherhood. "Courts will not interfere with the management of the internal affairs of a foreign corporation."   Sprague v. The Universal Voting Machine Co., 134 Ill. App. 379.   Nor will a court of equity "entertain a bill by a member of a private corporation against the corporation and its officers to restrain them from expelling the complainant for a violation of its rules and by-laws."   Bostedo v. Board of Trade, 227 Ill. 90, and cases there cited.   It was held in People v. Order of Foresters, 162 Ill. 78-86, that interference with the disciplinary powers of voluntary organizations whether incorporated or not "will never be justified unless the exercise of the power has been without jurisdiction or marked by gross injustice or unfairness."   No such state of facts appears in the case at bar.   Whatever interest the complainants or said locals in question have in the funds of the local unions is merely incidental to their membership of the Brotherhood, and it is difficult to see how the local unions as such can retain such interest when they have ceased by reason of the revocation of their charters to be connected therewith.   See Lawson v. Hewel, 50 Pac.

Rep. 763; State Council of the Order of United American Mechanics v. Sharp, 38 N. J. Equity, 24; Grand Lodge K. of P. of New Jersey v. Germania Lodge No. 50 et al., 38 Atlantic Rep. 341. In the Sharp case *supra* it was said that a Widows' and Orphans' Fund "was held by them (the defendants) also subject to the trust to pay it over to the State Council in case of the dissolution of the subordinate one." The same principle applies in the case at bar.

We are of opinion that courts should not, generally speaking, as stated by Judge Gary in Beesley v. Chicago Journeymen Plumbers Association, 44 Ill. App. 278-285, "interfere with the management of labor unions."

It is to be borne in mind that in this case the defendants are not the Indiana corporation and it is immaterial whether said corporation is or is not authorized to do business in this State. Said corporation is not in this suit seeking any relief. What is said in Supreme Order Iron Hall v. Grigsby, 178 Ill. 57, is not we think applicable to the case at bar.

For the reasons indicated the interlocutory orders appealed from will be reversed.

*Interlocutory orders reversed.*