F. H. CHAMBERLAIN, TRUSTEE, V. W. F. TROGDEN.

(Filed 29 May, 1908.)

1. Corporations — Subscription Note — False Representations — Defenses—Laches.

While one who has subscribed to the stock of a corporation and given his note therefor may, as a valid defense to an action by the trustee in bankruptcy subsequently appointed, set up that the note was given by reason of false and fraudulent representations on the part of the president as to solvency, when the company at the time in question was insolvent, he must act with promptness and due diligence, both in ascertaining the fraud and taking steps to repudiate his obligation.

2. Same—Questions for Jury.

In a suit by a trustee in bankruptcy on a note given for the purchase price of shares of stock in a corporation insolvent at the time, when the defense is that the subscription was induced by fraudulent misrepresentations of the corporation's president that the company was solvent, evidence upon the question of laches of the subscriber should be submitted to the jury, which tends to show that the subscriber was fifty-three years old, a man of affairs, lived in the vicinity, knew when he made the subscription that the corporation had given indications of weakness and had for a time been in the hands of a receiver; that a cursory examination of the books, accessible to him, would have disclosed that, of $25,000 of stock issued, only $4,300 had been paid in; that a large amount of the corporation indebtedness was evidenced by mortgages duly registered, and that he had been told that the company was totally insolvent and likely to go into bankruptcy.

ACTION to recover the amount of a note for $500, with interest thereon, given by defendant to the Damask Manufacturing Company for stock issued by the company and delivered to and held by defendant, tried before *Ward, J.,* and a jury, at October Term, 1907, of WILKES.

The subscription was made and note was given by defendant on 5 June, 1905. On 15 September of the same year, the company having been duly adjudged a bankrupt, plaintiff was appointed trustee; and in July, 1906, the present action was instituted to recover the amount of the note. Defendant

answered, and alleged in bar of recovery that the note was given by reason of false and fraudulent representations on the part of the president of the company.

Issues arising on the pleadings were framed and submitted, and responded to by the jury, as follows:

1. "Did defendant execute the note sued on in this case?" Answer: "Yes."

2. "Has any of said note been paid?" Answer: "No."

3. "Was the execution of said note procured by the false and fraudulent representations of Ira R. Hayes, president of the Damask Manufacturing Company?" Answer: "Yes."

4. "If so, did defendant afterwards exercise due care and diligence in discovering the fraud and repudiating the contract?" Answer: "No."

By consent of parties, the first issue was answered "Yes" and the second "No."

The defendant in apt time requested the court to charge the jury that, upon the "whole evidence, they should answer the fourth issue 'Yes.'" This was refused, and defendant excepted. There was judgment on the verdict for plaintiff for the amount of the note and interest, and defendant excepted and appealed.

*R. C. Strudwick* for plaintiff.
*W. W. Barber* and *F. D. Hackett* for defendant.

HOKE, J., after stating the facts: There is some conflict of authority as to the right of a subscriber to rescind his subscription or maintain a defense to his obligation therefor on the ground of fraud, after the corporation has become insolvent and its affairs have passed into the possession and control of a receiver or the bankruptcy court, or other method of general adjustment, primarily for the benefit of creditors. The English cases and some courts in this country have held that, under conditions indicated, it is no longer open to the subscriber to maintain such a defense. These English decisions,

however, are said to be based to some extent on the construction given to certain legislation on the subject, and the weight of authority in this country seems to establish that, under exceptional circumstances, the subscriber may avail himself of the position suggested even after insolvency. Cook on Corporations, secs. 163, 164, 165; Clark and Marshall Private Corp., secs. 473-479; *Ramsay v. Manufacturing Co.,* 116 Mo., 313; *Martin v. Land Co.,* 94 Va., 51-53; *Havard, Receiver, v. Turner,* 155 Pa. St., 349.

All of the authorities, however, are to the effect that, in order to do so, the subscriber must act with promptness and due diligence, both in ascertaining the fraud and taking steps to repudiate his obligation. *Thompson v. Savings Bank,* 19 Nev., 103; 3 Amer. St. Reports, note on p. 824; *Clark and another v. Thomas, Receiver,* 34 Ohio St., 46; *Wallace v. Hood,* 89 Fed. Rep., p. 11; *Wallace v. Bacon,* 86 Fed. Rep., p. 553; *Ross-Mebern-Brooke Co. v. Southern Iron Co.,* 72 Fed., 957. And this question of proper diligence is usually one for the jury. *Urner v. Sollenberger,* 89 Md., 316:

In the present action the defendant has had the full benefit of this established principle, and, under a correct charge, the jury in their answer to the fourth issue have determined the question against him. The only objection insisted on to the validity of this recovery is that the Judge below declined to charge the jury "that on the whole evidence, if believed, the jury should answer the fourth issue for the defendant," but the exception is without merit. While the time during which the defendant was under this obligation was not of any great length, it appeared that defendant was fifty-three years of age, a banker and a man of affairs, and he knew when he made the subscription that the company had given indications of weakness and had for a time been in the hands of a receiver. He was resident in the vicinity, and by slight effort and the exercise of ordinary business prudence could have easily ascertained the condition of affairs. He knew the secretary and

treasurer, and a cursory examination of the books would have disclosed that, of $25,000 worth of stock issued, only $4,300 had been paid in. A large amount of the company's indebtedness was evidenced by mortgages on the company's real estate, duly registered in the county. All this was open to him, or could have been readily ascertained, and defendant not only took no steps to inform himself and make complaint as to the alleged imposition, but there was testimony to the effect that, as late as August, when told that the company was wholly insolvent and the only chance for it was a reorganization, and that unless as much as $10,000 was raised the company would likely have to go into bankruptcy, the defendant declined to give a proxy to vote his stock, but said he intended to keep his stock and vote it himself if occasion arose.

There was assuredly no error to defendant's prejudice in submitting the question of his laches to the jury, and the verdict and judgment against him must be affirmed.

No Error.