## Jones v. Dodge.

### Opinion delivered January 9, 1911.

1. Corporation—who may question existence of.—The existence of a corporation, once formed, can be questioned only in a direct proceeding and at the suit of the State. (Page 251.)

2. SAME—ESTOPPEL TO QUESTION EXISTENCE OF.—One who contracts with an acting corporation cannot defend himself against a claim on such contract by alleging the irregularity of its organization. (Page 251.)

3. SAME—LIABILITY OF SHAREHOLDER.—A person who has assisted in the organization of a corporation cannot escape liability as a subscriber to its stock on the ground that it was not organized according to the requirements of the statute, as that it failed to comply with a statutory requirement that a certain amount be paid in before commencing business. (Page 252.)

4. SAME—LIABILITY.—The failure of a corporation to comply with a statutory provision requiring a certain amount to be paid in before commencing business cannot be set up either by the corporation or by the stockholders to avoid a liability which has been assumed by them. (Page 253.)

5. SAME—LIABILITY OF SHAREHOLDER—RELEASE.—The obligation of a corporator to pay the full amount of all the shares for which he has subscribed cannot be released by the company or its officers. (Page 253.)

Appeal from Pulaski Chancery Court; *John E. Martineau,* chancellor; affirmed.

*June P. Wooten,* for appellants.

*Robert Martin,* for appellee.

FRAUENTHAL, J. This is an appeal from judgments that were recovered by the receiver of an insolvent corporation against the defendants below upon subscriptions made by them for shares of the stock of said corporation. The suits were instituted against the defendants severally upon notes executed by them to the corporation for the par value of the stock for which they had subscribed. On March 2, 1905, all the subscribers to the capital stock of the People's Fire Insurance Company met for the purpose of organizing said corporation in pursuance of the laws of Arkansas in that behalf provided for the "incorporation for manufacturing and other lawful business." On that day the articles of agreement for the incorporation of said company were duly signed and executed by all the subscribers. All of the capital stock was subscribed, and the number of shares of stock subscribed for by each corporator was set out in said articles of association. The defendants duly signed and executed said articles after all other corporators had signed same and therein subscribed for forty shares each of said capital stock. The amount of the capital stock of said corporation was stated to be

$100,000 in said articles, which also contained a provision stating that "fifty thousand dollars of said capital stock have been actually paid in by the subscribers hereto." The general nature of the business proposed to be transacted by said corporation was a "general insurance against loss by fire, wind storms, tornadoes and cyclones," to buy, sell and deal in real estate, and to contract and rent buildings, "and to do everything necessary to its interest as an insurance company." Upon the same day the corporators held the first meeting for organization and elected directors of the corporation, who elected the officers thereof; and the articles of association were then on the same day filed in the office of the Secretary of State and county clerk in manner provided by law. Eight of the corporators of the insurance company subscribed for a large number of the shares of the capital stock, and executed to the corporation their note in the sum of $50,000 therefor. Thereupon application was made to the Auditor of State under section 4345 of Kirby's Digest for the issuance of a certificate entitling the insurance company to do business in the State of Arkansas. The statement made to the Auditor showed that the subscribed capital of the corporation amounted to $100,000, and that $50,000 thereof had been paid up by notes executed to the corporation. The Auditor declined to issue the certificate or license entitling the company to do business in the State for the reason that the company should have had $50,000 in cash, instead of notes representing its assets. Thereupon the insurance company, by discounting the notes which it held and owned, obtained from a banking institution the sum of $50,000; and on March 8, 1905, presented to the Auditor the certificate of deposit or deposit slip of said bank therefor, and the Auditor thereupon issued to the People's Fire Insurance Company a certificate or license entitling it to do business in the State. The insurance company then began business, and continued to transact business from that date until January 19, 1907, when it failed, and a receiver was appointed to take charge of its affairs. During its existence the insurance company did quite an extensive business, and at the date of its failure it was indebted to creditors in a large amount. The defendants executed their several notes herein sued on to the corporation for the shares of stock subscribed for by them on March

15, 1905, about the time the company actively began its business, and the notes were made payable one year after date.

In their answers the defendants pleaded that the notes were executed for their subscriptions to the capital stock of the corporation which was intended to be organized under the laws of the State for the purpose of doing a general fire insurance business, and that the subscriptions were "made upon the expectation and condition that such laws would be fully complied with, so that the company would have a legal and effectual organization for the purpose of engaging in said business. That section 4335 of Kirby's Digest was never complied with, in that $50,000 of the capital stock was never at any time paid up, and that the company at no time had a legal right to do the business contemplated at the time of its organization;" and on this account they claimed and now urge that they are not liable upon said notes.

The defense that is thus made against a recovery upon these notes and the subscriptions which they represent is that the corporation had not complied with the laws of the State in its organization, and therefore had no right to exist as a body corporate. The rightfulness of the existence of a body claiming to act, and acting, as a corporation cannot be questioned in actions between private individuals and such corporation; the question as to whether or not the assumed corporation has a rightful existence can be raised only by the State, the sovereign by whom it is created. Such question cannot be litigated in a collateral proceeding, such as a suit instituted by the corporation, or its legal representative, against its alleged debtor. This principle is almost universally recognized, and has had uniformly the sanction of this court. In the case of *Brown* v. *Wyandotte & Southeastern Ry. Co.*, 68 Ark. 134, it is said: "It is the doctrine of the Arkansas Supreme Court decisions that the existence of a corporation, once formed, can be questioned only by a direct proceeding, and that at the suit of the State." *Hammett* v. *Little Rock, etc., R. Co.*, 20 Ark. 204; *Mississippi, etc., R. Co.* v. *Cross*, 20 Ark. 443; *Searcy* v. *Yarnell*, 47 Ark. 269.

The defendants contend that they are not liable for the subscription notes executed by them to the corporation because the insurance company had not complied with some provisions of the law which were essential to its organization and existence as a

corporation. But the People's Fire Insurance Company had filed its articles of association in the manner provided by the statutes of this State for the incorporation of business corporations, and had received a certificate of incorporation from the proper official. It had made application to the proper official of the "insurance bureau" of the State, and from him had received license to do insurance business. At the time of the execution of the notes sued on it was acting as a corporation, and for almost two years prior to the insolvency of the company it acted and did business as such corporation. If there was any irregularity in the organization of said corporation, it cannot avail defendants as a defense to this suit brought upon these contracts which they made with this corporation. This principle is thus stated by the Supreme Court of the United States in the case of *Chubb* v. *Upton*, 95 U. S. 665: "It is settled by the decisions of the courts of the United States and by decisions of many of the State courts that one who contracts with an acting corporation cannot defend himself against a claim on such contract by alleging the irregularity of its organization. * * * The same principle applies to the case of a subscription to the capital stock in an organization which has attempted irregularly to create itself into a corporation by alleging the irregularity of its organization." 2 Thompson on Corp., § 1850.

This principle is applicable to the subscriber to the capital stock of the corporation on the further ground of estoppel. The subscriber has assisted in the organization of the corporation, and has thus aided in giving to it not only an existence but a credit by the use of his subscription. The liability which he assumed when he subscribed for the stock of the corporation assisted in giving to it a standing and a credit. He should not therefore be permitted to escape the liability which he thus assumed to the creditors of the corporation on the ground that the company was not organized in strict conformity to the law. The requirement of the statute which the defendants allege the insurance company did not comply with was to have a paid-up capital of $50,000. If this allegation should be true, the failure to have such paid-up capital was caused partly by the defendants themselves. They gave notes for the entire amounts of their subscriptions payable one year after date, and therefore paid no part

thereof in cash. If therefore a portion of the subscriptions of the corporators should have been paid in cash before obtaining the license to do business, the defendants assisted in the failure of this insurance company to comply with that requirement. They should not now be heard to plead such a delinquency on their part to defeat a liability to the corporation and its creditors which they assumed by reason of the subscriptions they made to its capital stock. A person who has assisted in the organization of a corporation cannot escape liability as a subscriber for its stock on the ground that it was not organized according to the requirements of the statute. *Selma & T. Rd. Co.* v. *Tipton,* 5 Ala. 807; *Central Plank Rd. Co.* v. *Clemens,* 16 Mo. 365.

The rule is thus stated in 2 Thompson on Corp. § 1849: "The subscriber cannot, when sued by the corporation to enforce his contract of subscriptions, set up as a defense an irregularity in the organization of the corporation. * * * So, in an action by an insolvent corporation to collect an assessment for the purpose of paying their debts, the interests of the creditors will be so far regarded that no defense grounded on defects in the organization of the corporation can be maintained." 2 Morawetz, Private Corporations, § 742; *East Pascogoula Hotel Co.* v. *West,* 13 La. Ann. 545; *Sanger* v. *Upton,* 91 U. S. 56.

And the failure by the corporation to comply with a statutory provision requiring a certain amount to be paid in before commencing business cannot be set up, either by the corporation or by the stockholder, to avoid a liability which has been assumed by them. 2 Thompson on Corp., § 1232.

The notes herein sued on were executed for shares of the capital stock of the corporation. The defendants assisted in the organization of the company by voting as shareholders for the directors thereof, and thereby have held the company out to the world as legally incorporated. They have thus enabled it to do business and obtain credit. Upon the faith of these notes and of similar notes the public was induced probably to give credit to the company; and the defendants should not now be permitted to defeat the notes upon which these creditors were induced to rely as a part of the capital of the company.

It is also claimed by the defendants that at the time of the organization of the insurance company there was a secret agree-

ment between the above eight corporators, who had made large subscriptions to the capital stock, that they should be liable only for one-half of the amount of the shares subscribed by each of them, and that such an agreement was a fraud upon the rights of defendants who were ignorant thereof. But such an agreement, if made, would not be valid, and would not release those subscribers from their liability to the corporation for the full amount of the shares for which they actually subscribed. The obligation of a corporator to pay the full amount of all the shares for which he has subscribed cannot be released by the company or its officers. The attempt to do this could not be successful. Such an agreement would be void, and the status of such corporators and their liability would be and continue as if no such agreement had been made. The defendants could not be defrauded by such invalid agreement, and therefore could not have been injured thereby. *Upton* v. *Tribilcock,* 91 U. S. 45.

Such an agreement, if made, would not be a defense against the liability incurred by the defendants by the execution of the notes sued on for their subscriptions to the capital stock.

The above are the only defenses interposed by the defendants why recovery should not be had on said notes; and we do not think that any of them is meritorious or legally well founded.

The judgments are affirmed.