MITCHELL et al. v. HANCOCK. (No. 8533.)*

(Court of Civil Appeals of Texas. Ft. Worth. March 17, 1917. Rehearing Denied May 5, 1917.)

1. APPEAL AND ERROR ☞791—DEFECTIVE APPEAL BOND—OBJECTION—WAIVER.

Under Rules of Court of Civil Appeals, rule 8, providing that all motions relating to informalities in the manner of bringing a case into court shall be filed and entered within 30 days after filing of the transcript, otherwise the objection shall be deemed waived, and in view of Vernon's Sayles' Ann. Civ. St. 1914, art. 2104, providing that where an appeal is taken within the prescribed time by filing a bond defective in form and substance, the appellate court may allow the bond to be amended by filing a new bond, it did not require the dismissal of an appeal as to a receiver appealing, that the obligatory words of the appeal bond in form seem to apply only to the appellant company represented by the receiver, where it appeared that the receiver, if not a principal, was bound as a surety, and that it was his intent to prosecute the appeal, and it further appeared that appellee had made no motion objecting to the form of the bond.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3133–3136.]

---

**2. CORPORATIONS** ⊂⊃609 — DISSOLUTION — JURISDICTION.

Proceedings to dissolve a corporation can be brought only in the country or state in which the corporation was created.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2420–2423.]

**3. WORDS AND PHRASES—"MUST"—"MAY"—"SHALL."**

The ordinary meaning of "shall" or "must" is of mandatory effect, while the ordinary meaning of "may" is purely permissive in character.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, May; Must; Shall.]

**4. STATUTES** ⊂⊃224 — CONSTRUCTION — CONFLICT.

Statutes will not be construed as conflicting if such construction can be reasonably avoided.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 300, 302, 306.]

**5. CORPORATIONS** ⊂⊃560(7)—ACTIONS AGAINST—VENUE.

As used in Vernon's Sayles' Ann. Civ. St. 1914, § 2147, providing that actions may be brought against the receivers of a corporation in the county where the principal office of said corporation is located, the word "may" is permissive rather than mandatory in effect, and therefore such statute does not limit jurisdiction of actions against receivers to the county where the principal office is located.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2258, 2262.]

**6. CORPORATIONS** ⊂⊃560(9)—ACTIONS AGAINST—VENUE.

Where an action was brought in the proper county against a corporation and thereafter a receiver was appointed for the corporation and joined as a party defendant, and it appeared that no act of the receiver was complained of by plaintiff and that no right to relief at the receiver's hands was set up, but that he was made a party merely to conclude him by the decree, and that he did not object to being a party to the litigation, his plea to the jurisdiction on the ground that he was not sued in the county where the principal office of the corporation was located was properly overruled.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2262.]

**7. STIPULATIONS** ⊂⊃19—ENFORCEMENT—PARTIES.

In an action in which it was sought to enforce an agreement that the action, with others, should abide the result of a certain pending action and be determined by such result, it was not necessary that the parties plaintiff in the other suits mentioned in the agreement should be joined as parties to the present action, though the validity of the agreement was incidentally involved.

[Ed. Note.—For other cases, see Stipulations, Cent. Dig. §§ 55–63.]

**8. STIPULATIONS** ⊂⊃11—VALIDITY—MUTUAL BENEFITS.

It is not essential to the validity of a stipulation between the parties that a pending action shall abide the result of another action and be determined thereby that the stipulation be mutually beneficial, but is sufficient that it be based on a valid consideration and not inhibited by law or contrary to good morals or public policy.

[Ed. Note.—For other cases, see Stipulations, Cent. Dig. § 23.]

**9. STIPULATIONS** ⊂⊃12 — REPUDIATION — RIGHT.

A valid stipulation, signed by attorneys authorized to so do, and providing that the action shall abide the result of another action and be determined thereby, cannot be repudiated by the original defendant or by its receiver subsequently appointed and made a party, after the original defendant has acted upon it and received its benefits.

[Ed. Note.—For other cases, see Stipulations, Cent. Dig. § 66.]

**10. CORPORATIONS** ⊂⊃228—ASSETS—LIABILITY OF SHAREHOLDERS.

The liability of shareholders of a corporation to contribute the amount of their shares as capital is ordinarily treated in equity as assets like other legal claims belonging to the corporation, and this liability, together with the capital actually contributed, constitute a trust fund which is deemed pledged for payment of corporate debts.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 874, 878.]

**11. CORPORATIONS** ⊂⊃80(10) — SUBSCRIPTION FRAUDLENTLY PROCURED — RIGHTS OF DELINQUENT SUBSCRIBER.

A delinquent subscriber to corporate stock cannot ordinarily complain that his subscription was obtained through fraud of the promoters, officers, or agents of the corporation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 262.]

**12. CORPORATIONS** ⊂⊃80(10) — SUBSCRIPTION CONTRACT—RIGHT TO RESCIND.

Where a stockholder has, for a considerable time prior to the failure of a corporation, acted as stockholder and enjoyed the rights, privileges and benefits of that relation, and received dividends, he cannot, after failure of the corporation, rescind his subscription contract on the ground that it was obtained by false representations.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 262.]

**13. CORPORATIONS** ⊂⊃80(10) — STOCK SUBSCRIPTION—CANCELLATION—ESTOPPEL.

Where, in a suit brought against a corporation to cancel a subscription contract and certain notes and a deed of trust executed for stock to be issued to plaintiff by the corporation, it appeared that the corporation was a going concern and not declared insolvent until after the suit was instituted, and did not appear that plaintiff was guilty of laches, or that he had ever participated as a stockholder or otherwise in the corporation's proceedings, or that any creditors of the corporation indirectly represented by the defendant receiver for the corporation became creditors after plaintiff subscribed for his stock, or were induced by such subscription to extend credit to the corporation, plaintiff was not estopped to secure the cancellation of the contracts on the ground that they had been procured by the corporation through fraudulent representations.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 262.]

Appeal from District Court, Baylor County; Jo. A. P. Dickson, Judge.

Action by W. L. Hancock against the Commonwealth Bonding & Casualty Insurance Company, to which J. W. Mitchell, receiver for defendant, was made a party defendant by amended petition. From judgment for plaintiff, defendants appeal. Affirmed.

Ocie Speer, of Ft. Worth, for appellants. James A. Stephens, of Benjamin, C. D. Russell, of Plainview, and Carrigan, Montgomery & Britain, of Wichita Falls, for appellee.

⊂⊃For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

CONNER, C. J. This suit was originally filed in the district court of Dawson county on September 7, 1912, by the appellee, W. L. Hancock, against the Commonwealth Bonding & Casualty Insurance Company, to cancel a certain subscription contract and certain notes, and a certain deed of trust upon land in Dawson county. Said instruments were alleged to have been executed for stock thereafter to be issued in said company upon certain representations not necessary to set out, which were alleged to be false and to have been fraudulently made. Later, the suit by agreement was transferred for trial to Baylor county, Tex., from the district court of which latter county the case has been brought to this court. After the cause had been pending in the district court of Baylor county for some time, the plaintiff in the suit, Hancock, on January 15, 1916, filed an amended petition, in the first count of which the plaintiff reiterated the original grounds of the action, and, among other things, further alleged that the appellant J. W. Mitchell had been, by order and judgment of the district court of Tarrant county, appointed receiver of the Commonwealth Bonding & Casualty Insurance Company and its property and assets, and that such receiver had been duly qualified and was acting as such receiver under the orders of the said district court of Tarrant county, and the prayer was, in effect, for a rescission and cancellation of said stock subscription contract, notes, etc., as against both said Bonding Company and its said receiver.

The petition contained a second count in which, in substance and in so far as necessary to here state, it was alleged, as against both said Insurance Company and its said receiver, that on or about the 31st day of July, 1913, there was pending in the district court of Baylor county, Tex., the cause of E. P. Bomar v. John Scharbauer et al., in which at said time Bomar was plaintiff and the Commonwealth Bonding & Casualty Insurance Company and one R. T. Stuart were defendants, and in which said E. P. Bomar sought a cancellation of a certain subscription contract, notes, and deed of trust executed by him for stock in the Commonwealth Bonding & Casualty Insurance Company, which said subscription contract was substantially like the contract which the plaintiff in this suit sought to have canceled; that on said day of July in said cause judgment was duly rendered in favor of the plaintiff, E. P. Bomar, canceling his said subscription contract, notes, and securities therefor, and for all moneys paid by said Bomar to the promoters of said corporation at the time of the execution of his said subscription contract. It was further alleged that after the trial and judgment, "in order to save the costs and expenses of numerous trials of causes involving the same issues, the attorneys for the plaintiff herein," and the attorneys, naming them, for the Commonwealth Bonding & Casualty Insurance Company and said R. T. Stuart, and the attorneys representing various other parties having suits similar in nature against said insurance company, all of whom it was alleged were duly authorized to so do, entered into a certain contract and agreement by the terms of which it was agreed that this cause and certain other causes then pending against the defendants Commonwealth Bonding & Casualty Insurance Company and R. T. Stuart should abide the result of said cause of E. P. Bomar v. John Scharbauer et al. It was alleged that by the terms of said agreement this cause was to be continued until the final determination of the case of Bomar v. Scharbauer et al., and that in event the said judgment in favor of Bomar should finally be affirmed by the appellate courts of the state of Texas, then a like judgment should be rendered in this cause, and in each of the other causes referred to in said agreement, for the cancellation of the obligations given by the plaintiff in each of said causes, and for the recovery of all money paid by the plaintiffs to the Commonwealth Bonding & Casualty Insurance Company or for promotion fees; that in event said judgment in favor of Bomar should be reversed by an appellate court, then the agreement should not further affect the rights of the several plaintiffs in the causes mentioned, except in so far as the same provided for a continuance of said causes until a final disposition of the Bomar Case. It was further alleged that the said cause of said E. P. Bomar was, on appeal, duly prosecuted, presented to and determined by the Court of Civil Appeals for the Seventh Supreme Judicial District at Amarillo, Tex., which in all things affirmed the judgment below in favor of Bomar, but rendered judgment in favor of said R. T. Stuart on the cross-action which had been presented against him by the Commonwealth Bonding & Casualty Insurance Company; that the said judgment had been "finally determined by the appellate courts of this state," and that the plaintiff in this cause had in all things complied with the said agreement, by the terms of which it was alleged the plaintiff was entitled to judgment as prayed for. It was further alleged that said agreement had been duly signed by all the counsel named, and thereafter duly ratified and approved by resolution of the board of directors of the Commonwealth Bonding & Casualty Insurance Company, and had been also ratified and approved by said R. T. Stuart; that, acting under said agreement and by virtue thereof, this cause and other causes named therein were continued at each term of the court of the counties named in the agreement until after the final determination of said case of Bomar v. Scharbauer. Attached to this pleading was a copy of the agreement referred to which included some 23 cases, including the one under consideration, in which like complaints were made of subscription contracts, and 16 cases represented by coun-

sel signing the agreement of parties in suits thereafter to be filed.

The receiver, J. W. Mitchell, answered for the company, pleading in abatement of the suit a judgment of the district court of Tarrant county dissolving the corporation. He also duly presented a plea of privilege under the statute to be sued in Tarrant county, Tex.; also presented various exceptions to the plaintiff's pleading; denied the validity of the agreement set up; alleged the agreement had been breached by the plaintiffs mentioned therein; that it had not been ratified and approved by R. T. Stuart, and had been promptly disaffirmed and repudiated by the Commonwealth Bonding & Casualty Insurance Company as soon as it had learned that the same had been approved by it through a misapprehension of fact. The receiver also pleaded in reconvention, seeking to recover against the plaintiff upon the note and securities described in his pleading. The court overruled the receiver's exceptions to the plaintiff's pleadings, sustained exceptions to the pleas in abatement and of privilege, and rendered judgment in favor of the plaintiff upon the agreement above described. Thereafter the receiver filed his motion for new trial, which was heard and overruled by the court, to which action both the receiver and the Commonwealth Bonding & Casualty Insurance Company excepted and gave notice of an appeal, and an appeal has been prosecuted to this court.

[1] One or more of the closely contested questions presented before us is dependent upon whether the receiver has prosecuted an appeal from the judgment below. We hence deem it proper in the beginning to notice a suggestion made in behalf of appellee on the submission of this cause, to the effect that the record shows no appeal on the part of the receiver. This contention is based upon wording in the body of the appeal bond. The bond is in form such as would perfect an appeal, both for the receiver and for the Commonwealth Bonding & Casualty Insurance Company, unless the following wording requires a different conclusion. The bond, after reciting the proceedings and embodying the judgment, reads:

"Now, therefore, know all men by these presents, that we, Commonwealth Bonding & Casualty Insurance Company, acting by and through J. W. Mitchell, its receiver, defendant in the above numbered and styled cause, as principal, and the other signers hereto as sureties, acknowledge ourselves to be bound unto W. L. Hancock, plaintiff in said cause, in the sum of three hundred dollars," etc.

And it is thus signed:

"Commonwealth Bonding & Casualty Insurance Company, J. W. Mitchell, Receiver. Southern Surety Company, by Herman Gartner, Attorney in Fact."

While the obligatory words of the bond which we have quoted in form seem to apply alone to the appellant Commonwealth Bonding & Casualty Insurance Company, yet we have concluded that the receiver should not be denied a hearing before us. It is to be noted that the receiver is certainly a party to and bound by the bond; if not as a principal, certainly as a surety, and the record seems to demonstrate that it was the manifest purpose and intention of the receiver to duly prosecute an appeal from the judgment of the district court. As stated, he formally presented a motion for new trial, both for himself as receiver and for his codefendant. He likewise, for both, as stated, formally gave notice of appeal. At no time prior to the submission did appellee, by motion or otherwise, call attention to the actual or supposed insufficiency of the bond in question to operate as an appeal on behalf of the receiver. Rule 8 for the government of Courts of Civil Appeals provides that all motions relating to informalities in the manner of bringing a case into court shall be filed and entered by the clerk on the motion docket within 30 days after the filing of the transcript in the Court of Civil Appeals; "otherwise the objection shall be considered as waived," if it can be waived by the party. And by statute (see Vernon's Sayles' Texas Civil Statutes, art. 2104) it is provided that when an appeal has been taken from the judgment of any of the courts of this state by filing a bond within the time prescribed by law in such cases, and it shall be determined by the court to which the appeal is taken that such bond is defective "in form or substance," the appellate court may allow the appellant to amend such bond by filing a new bond on such terms as the court may prescribe. An appeal bond, therefore, merely defective, either in form or substance, will give this court jurisdiction. In such case we have the power to require a new bond not subject to any objection, and in cases, as here, where the appellee makes no motion to that end, and where, as we think is the case here, an attempt at least was made by the appellant receiver to give a bond, we are of the opinion we should proceed to hear and determine the appeal. See Hugo v. Seffel, 92 Tex. 414, 49 S. W. 369; Williams v. Wiley, 96 Tex. 148, 71 S. W. 14; Palmer v. Spandenberg, 49 Tex. Civ. App. 331, 108 S. W. 477; Appel v. Childress, 53 Tex. Civ. App. 607, 116 S. W. 129; Butts v. Davis, 146 S. W. 1015.

We are thus brought to a consideration of the questions relating to the merits of the appeal. As stated, the appellant receiver pleaded in abatement of the suit a judgment dissolving the corporate existence of the Commonwealth Bonding & Casualty Insurance Company, and appellants first insist that the court erred in sustaining the plaintiff's exception to this plea. It will not be necessary to set out the plea in full. We think it sufficient to state that the plea shows that the Commonwealth Bonding & Casualty Insurance Company was incorporated on or about the 23d day of March, 1911, in the then territory of Arizona as a private corporation, for

196 SOUTHWESTERN REPORTER (Tex.

the purpose of carrying on the business of bonding, casualty, and indemnity insurance, and such other insurance generally as a corporation of that character could lawfully engage in, and that it obtained permission to do such business in the state of Texas, and continued to carry on such business in said state of Texas until the 18th day of September, 1915, when Bacon Saunders, joined by certain other persons, filed suit in the Sixty-Seventh district court of Tarrant county, Tex., alleging the insolvency of said corporation, and prayed for an order and judgment dissolving the corporation and the appointment of a receiver for its properties and effects. The plea alleged that the suit for dissolution and for the appointment of a receiver was filed on the 18th day of September, 1915, and that on the same day the corporation named answered, admitting its insolvency and submitting itself to the jurisdiction of said district court of Tarrant county, for the purpose of a judgment by said court upon its insolvency, for a dissolution of said corporation, and for the appointment of a receiver, as prayed for. The plea further alleged that at the time and in the court named, the judge of said court made and entered an order, judgment, and decree dissolving said corporation, and placing all of its assets, property, and choses in action in the hands of receivers. It was alleged that the appellant J. W. Mitchell had been appointed receiver, and that up until the said time of the dissolution of the corporation, the said Commonwealth Bonding & Casualty Insurance Company had and maintained its principal place of business and office in the city of Ft. Worth Tarrant county, Tex., whereupon, as alleged in the plea, the present action abated.

[2] While ordinarily, at least, a proper decree dissolving the corporation will have the effect of abating suits against it, and while a domestic corporation in this state may be dissolved on the ground of its insolvency (Vernon's Sayles' Texas Civil Statutes, arts. 1202, 1205) we know of no authority for the courts of this state to dissolve a foreign corporation on any ground. In 7 R. C. L. § 741, it is said:

"Proceedings to forfeit a corporate franchise mut be brought in the country or state in which the corporation was created. The courts of any other country or state have no jurisdiction. The power to create a corporation is an attribute of sovereignty, and it is therefore, as to its corporate existence, amenable to and controllable in this respect by the sovereignty which created it and by none other."

This announcement of the law seems well established by the authorities. State v. Curtis, 35 Conn. 374, 95 Am. Dec. 263; Swift v. State, 7 Houst. (Del.) 338, 6 Atl. 856, 32 Atl. 143, 40 Am. St. Rep. 127; Republican Mountain S. Mines v. Brown, 58 Fed. 644, 7 C. C. A. 412, 24 L. R. A. 776; Hietkamp v. Am. Pigment Co., 158 Ill. App. 587; Miller v. Hawkeye Gold Dredging Co., 156 Iowa, 557, 137 N.

W. 507; T. & P. Ry. Co. v. Gay, 86 Tex. 575, 26 S. W. 599, 25 L. R. A. 52.

Indeed, the announcement of the law made in the quotation from 7 R. C. L. seems to be plainly implied from the wording of our own statute (article 1202) above cited. Said article reads:

"It is hereby made the duty of the Attorney General of this state, when convinced that any corporation is insolvent, to institute quo warranto, or other appropriate proceedings in some court of competent jurisdiction, either in Travis county or in any other county in which said corporation may be sued, to forfeit its charter, if a *domestic corporation*, and *to cancel its permit, if a foreign corporation.*" (Italics ours.)

We will not stop to inquire what authority, if any, Bacon Saunders and his coplaintiffs, none of whom is alleged to be the Attorney General of the state, had to institute the suit in the district court of Tarrant county, Tex., to dissolve the corporation. It will be sufficient, we think, to say that said court in no event had jurisdiction to dissolve the corporate power and existence of the Commonwealth Bonding & Casualty Insurance Company. That corporation, in so far as affected by the proceedings recited in the plea of abatement, must be held to have had a continued existence and answerable in the district court of Baylor county at the suit of the appellee in this case. Appellant's first assignment is accordingly overruled.

The appellant, J. W. Mitchell, also presented, in due order of pleading as we conclude, his plea of privilege to be sued in Tarrant county. The plea recites the incorporation of the Commonwealth Bonding & Casualty Insurance Company under the laws of Arizona, and the purposes contemplated thereby, and further alleges that:

"The principal office and place of business of the said corporation of which he is the receiver was at all times, and is, in the city of Ft. Worth, in Tarrant county, Tex."

Wherefore it is charged in the motion:

"Article 2147 of the Civil Statutes of Texas determines and fixes the suits against receivers of such corporations as is and was the Commonwealth Bonding & Casualty Insurance Company, and that the plaintiff herein cannot have and maintain this suit against this defendant, receiver as aforesaid of said corporation, in any court in Baylor county, but that this suit should and ought to be filed as against said receiver in the district court of Tarrant county at Ft. Worth, Tex., which said county is the only place wherein suits may be filed against said receiver."

The court sustained the following special exceptions to the plea, viz.:

"Because the pleadings and the record in this cause show that this case was brought by W. L. Hancock v. Commonwealth Bonding & Casualty Insurance Company in the year 1912 for the purpose of canceling and rescinding the subscription contract set up in the plaintiff's petition, and of canceling the note therein set up and canceling the deed of trust therein referred to and removing the same as a cloud upon his title. And that said suit against said corporation has been pending in this court at all times since said date. And it further appears from the record that the said Commonwealth Bonding & Casualty Insurance Company had answered

in said cause, and agreed to a continuance thereof, at every term of the court since the original filing of this petition; and therefore this court has jurisdiction as to said Commonwealth Bonding & Casualty Insurance Company.

"And it further appearing from the record that at a former term of this court the said Commonwealth Bonding & Casualty Insurance Company has answered herein and filed a plea in reconvention in this cause, and therefore it conclusively appears that this court has jurisdiction of this cause as to the said Commonwealth Bonding & Casualty Insurance Company.

"And it further appears that J. W. Mitchell, the receiver, has but succeeded to whatever rights the Commonwealth Bonding & Casualty Insurance Company had; and therefore it appears that this court has jurisdiction, both as against the Commonwealth Bonding & Casualty Insurance Company and said receiver."

The action of the court in sustaining the exceptions noted is made the basis of appellant's second assignment of error.

As foreshadowed by the motion appellant's principal reliance is upon article 2147 of Vernon's Sayles' Texas Civil Statutes, which, so far as pertinent, reads:

"Actions may be brought against the receiver of the property of any person where said person resides. Actions may be brought against receivers of a corporation in the county where the principal office of said corporation may be located."

Appellant's insistence is that this article is mandatory and not merely permissive; that the word "may" should be construed as "shall," and used in an imperative sense so as to exclude the right to sue a receiver in any case in any county other than the county where the principal office of said corporation may be located. And this construction of the statute has been expressly upheld by the Court of Civil Appeals of the Seventh Supreme Judicial District at Amarillo in the case of Commonwealth Bonding & Casualty Insurance Co. v. J. C. Bowles, 192 S. W. 611. In that case J. C. Bowles instituted suit in the district court of Lubbock county against the insurance company and against J. W. Mitchell, receiver, to recover money, to cancel a note and deed of trust given by Bowles in payment for stock in the company, upon the ground, as in this case, of fraud. In that case as in this the trust deed covered land situated in Lubbock county, and it was charged that the fraudulent representations were made in that county. J. W. Mitchell, receiver, presented, as here, his plea of privilege to be sued in Tarrant county, and, as stated, the court upheld his contention and transferred the suit as prayed for in the plea. The opinion fails to disclose whether that suit was originally instituted against the insurance company and its receiver, Mitchell, or whether, as in the case we have before us, the suit had been theretofore instituted and was duly pending against the insurance company at and prior to the appointment of the receiver. But whether the cases are to be thus distinguished or not, and notwithstanding the high regard we have for the opinions of the appellate court which thus determined

the question in the Bowles Case, we have felt constrained to adopt a different conclusion. We have been led to our view by a consideration of a number of statutes other than the one relied upon by appellants relating to the question of venue and to suits against receivers, it being a familiar rule of construction that all laws pari materia must be construed with reference to each other.

Article 2147, relied upon by appellants, is but the codified form of section 9 of an act of our Legislature approved April 2, 1887 (Laws 1887, c. 131). See 9 Gammell's Laws of Texas, p. 119. Section 8 of the same act appears in the codification as article 2146 of Vernon's Sayles' Texas Civil Statutes, and this reads as follows:

"When any property of any kind within the limits of this state has been placed, by order of court, in the hands of a receiver, who has taken charge of such property, such receiver may, in his official capacity, sue or be sued in any court of this state having jurisdiction of the cause of action, without first having obtained leave of the court appointing such receiver to bring said suit; and, if a judgment is recovered against said receiver, it shall be the duty of the court to order said judgment paid out of any funds in the hands of said receiver as such receiver."

Article 1830 of chapter 4 of the same statutes, relating to the subject of the venue of suits, declares the general rule to be that:

"No person who is an inhabitant of this state shall be sued out of the county in which he has his domicile, except in the following cases, to wit. * * *"

Then follow 29 exceptions to the general rule as quoted. Because of the volume we will not here set out the exceptions referred to, but by an examination of the article it will be seen that of these exceptions some 19 are in the permissive form and some 10 in the mandatory or imperative. To illustrate, exception 10 reads:

"Where the suit is for the recovery of any personal property, in which case the suit may be brought in any county in which the property may be, or in which the defendant resides."

Exception 13 reads:

"Suits for the partition of lands or other property may be brought in the county where such lands or other property, or a part thereof, may be, or in the county in which one or more of the defendants reside."

Exception 14 reads:

"Suits for the recovery of lands or damages thereto, suits to remove incumbrances upon the title to land, suits to quiet the title to land, and suits to prevent or stay waste on lands, must be brought in the county in which the land, or a part thereof, may lie."

Exception 17 reads:

"When the suit is brought to enjoin the execution of a judgment, or to stay proceedings in any suit, in which case the suit shall be brought in the county in which such judgment was rendered or in which such suit is pending."

It is thus seen that the Legislature in regulating the question of venue had in mind the differing signification of the terms "may," "must," and "shall," and presumably used those differing terms in relation to the subject of venue advisedly, and this is fur-

ther indicated by exception 30 under said article 1830, which reads:

"Whenever, in any law authorizing or regulating any particular character of action, the venue is expressly prescribed, the suit shall be commenced in the county to which jurisdiction may be so expressly given."

[3] It will be conceded we feel sure that the ordinary meaning of "shall" or "must" is of mandatory effect, and that the ordinary meaning of "may" is merely permissive in character. Indeed, it has been said that the word "may" means "must" only in those cases where the third persons or the public have an interest in having the act done or have a claim de jure that the power shall be exercised. Rains v. Herring, 68 Tex. 468, 5 S. W. 369; Houston, E. & W. Ry. Co. v. Harding, 63 Tex. 162. Again, that "before treating it (may) as a word of command, there should be something either in the subject-matter or the context to indicate an intention that it was employed in that sense." San Angelo National Bank v. Fitzpatrick, 88 Tex. 216, 30 S. W. 1054. We see no reason why we should give to the word "may," as used in article 2147 relied upon by appellants, a meaning other than its natural one. This suit, as already shown, was originally instituted in Dawson county, where was located the land upon which appellee's trust deed rested. He specifically prayed that the cloud thereby cast upon his title should be removed, and his suit therefore expressly came within the fourteenth exception, above quoted, to the general rule prescribing the venue of suits. That exception is imperative in form. Had the suit been instituted in any other county, the petition so showing the facts would have been subject to exception, and it is not contended that the suit was not originally instituted in the proper county. That by agreement of all parties the suit was later transferred to Baylor county we think can make no difference in the principle involved in the question before us. We treat the question as in principle precisely the same as if the suit was yet pending in Dawson county. To adopt appellant's construction of article 2147 would be to clearly have two directly conflicting provisions relating to the venue of this suit; one (exception 14) expressly requiring the suit to be brought in Dawson county, the other (article 2147) expressly commanding the suit to be brought under the facts alleged in Tarrant county. Both could not be complied with if appellant's construction be adopted.

[4, 5] It is well settled that statutes are not to be construed as conflicting unless such construction cannot be reasonably avoided, and in the case before us we think the proper construction of article 2147 is to declare the article permissive in effect and not mandatory so as to conflict with and prevent the operation of other mandatory exceptions in the chapter relating to the subject of venue. This construction, as it seems to us, is fully justified by the very general language of article 2146, which we have already quoted. The language there is that a receiver "may, in his official capacity, sue and be sued in any court of this state having jurisdiction of the cause of action without first having obtained leave of the court appointing such receiver to bring such suit." This article, as it seems to us, includes something more and provides something beyond the alteration of the general equity rule theretofore existing that a receiver could not be sued without first obtaining leave of the court which appointed him. As it seems to us, it was further intended in the article to confer upon any court within this state, otherwise having jurisdiction of the cause of action, to therein sue the receiver, and that the terms here quoted are not to be limited, as appellant insists, to courts having jurisdiction of the subject-matter in the particular county where the principal office of the corporation may be located. Nor in a general way do we find any satisfactory reason why the construction insisted upon by appellant should be adopted. The appellee's suit was not one in rem. In no way is it sought to disturb the possession of property belonging to the corporation which has come into the receiver's hands, nor to interfere with the proper orders of the court appointing him. The receiver in a general way is but the representative of the corporation, and as such undoubtedly entitled, under the orders of the court appearing in this case, to enforce demands of the corporation for unpaid subscriptions for capital stock, but in doing so we know of no general principle which renders it necessary that he shall be accorded any greater right in the respect we are considering than exists in the corporation which he is representing. The plaintiff in this suit sought merely to establish the alleged invalidity of obligations which the receiver may claim, and does claim, to constitute assets which, in a proper proceeding, he is entitled to recover, but no reason is perceived why, if entitled to enforce these demands, they may not be as well enforced in a district court of Baylor county as in a district court of Tarrant county. Both courts are clothed with equal powers; and, the district court of Baylor county having without doubt acquired jurisdiction of the parties and subject-matter in this suit long prior to the appointment of a receiver, there can be found, as we think, no justification in the law for a removal of the cause to a court of Tarrant county of no greater powers. Ordinarily it is said that in order to make the receiver a proper codefendant with the original debtor in an action against the latter, "some right to relief at the receiver's hands should be stated and some relief prayed as against him." See High on Receivers (3d Ed.) § 258. And in the next section (259), it is said:

"The appointment of a receiver over the effects of one of the defendants, in an action for

the foreclosure of a mortgage, constitutes no bar to the continuance of the action, if properly begun; and such appointment can at most only render the action defective as to parties, so as to render it necessary for the plaintiff to bring the receiver before the court by a supplemental bill in the nature of a bill of revivor. And even this course is not necessary when the parties in interest are sufficiently represented before the court to enable it to properly determine the 'controversy."

[6] In the present suit no act of the receiver was complained of by the plaintiff or any right to any relief at the receiver's hands set up. It would seem that he was made a party merely in order to conclude him by the decree. He does not object to taking part in the litigation, but, on the contrary, affirmatively asserts rights in behalf of the corporation to choses in action claimed by it; and, as already stated, we think he can be accorded all the relief to which he may show himself entitled in the district court of Baylor county. See, also, what was said on this subject in the opinion of Mr. Justice Dunklin in Mitchell, Receiver of Commonwealth Bonding & Casualty Insurance Co. v. Porter (No. 8534) 194 S. W. 981, this day decided. We, therefore, on the whole conclude that appellant's second assignment of error should be overruled.

Several of the remaining questions involved in this appeal seem to have been presented in a companion case determined by the Court of Civil Appeals of the El Paso district. We refer to the case of the Commonwealth Bonding & Casualty Insurance Co. v. Beavers, reported in 186 S. W. 859. In the opinion in that case the identical agreement which formed the basis of the judgment below in this case is set out (omitting the names of some 40 plaintiffs in the suits instituted and to be instituted and specified in the agreement), and there, as under one of the assignments here, it was contended, in effect, that the court erred in proceeding with the trial of the cause without the necessary parties, to wit, without making parties the several plaintiffs last above referred to. In disposing of that question the El Paso court said:

"Should the trial court have granted a continuance so that the other parties to the above agreement could be made parties to this suit? It is apparent that the stipulation is a several one as to each and all parties. While it is in one document, with the style and number of each case upon it, nevertheless we think it clearly an agreement that judgment should be taken in each case wherever pending. There is no intimation in it that the cases named therein were to be consolidated, but if there were such a provision in the stipulation and the court refused to consolidate, still it could not be reversible error under the facts of this case; for if the stipulation bound the bonding company as a confession of judgment, it could make no difference whether one judgment were taken in 40 cases or 40 judgments be taken, except possibly as a matter of costs. The parties to the other suits were in no sense necessary parties to this suit, unless by the stipulation they bound themselves to become so, as a matter of convenience. Their causes of action were separate and distinct from this one, and they were in no way interested in the result of this suit: Any judgment entered in this cause could in no way affect the parties or their interests to the other suits. So, since we find no express provision in the stipulation that the cases should be consolidated and nothing to indicate that such was the intention of the parties at the time of its execution, we must conclude that it was not the intention of the parties to consolidate."

It would doubtless be sufficient to merely announce our concurrence in what was so said, but we will venture to add that the conclusions so stated are, as we think, well fortified by general principles and other authority. In the case of Miller v. Hawkeye Gold Dredging Co., by the Supreme Court of Iowa, reported in 156 Iowa, 557, 137 N. W. 507, it was said, in discussing the subject of necessary parties:

"* * * To justify joining parties as plaintiffs in an action, there must be some community of interest in the particular claim pressed for adjudication, and some common benefit or advantage in the relief sought. As observed in Martin v. Davis, 82 Ind. 38: 'To entitle two or more persons to join as plaintiffs, it is not sufficient that they each have a cause of action arising out of the same transaction or matter, if the relief sought by each be distinct and unconnected. The plaintiffs must have a common interest in the subject of the action and in the relief. Each must be interested in the relief sought by the other.' The rule so clearly stated was applied in Bort v. Yaw, 46 Iowa, 323, and there is no decision in this state to the contrary."

[7] In the case before us the primary purpose and ultimate object of the plaintiff was to secure the cancellation of the instruments described in his petition and relieve land owned by him from the cloud upon his title. In this relief, it seems clear, no one or more of the plaintiffs in the other suits mentioned in the agreement had any concern. The agreement was offered as evidence merely of the plaintiff's right to the relief he sought, and such agreement evidently was given no other effect. We will not stop to inquire whether all of the parties referred to would be necessary parties had the suit been one primarily to set aside the agreement. In that question each of the plaintiffs might be directly interested, but in this suit the question of the validity of the agreement is but incidentally and indirectly involved. Its consideration affected but one phase of the evidence which the appellee relied upon for the relief he sought. Had it been declared invalid he nevertheless, upon other evidences, may have been entitled to the same judgment. We can see no difference in principle on the question under consideration between this case and the case where many persons had been injured by a wreck upon a railway occurring through the negligence of the railway company. Each of such injured persons might have a cause of action and be entitled to recover damages, and though each of such persons might rely upon the same act of negligence as the basis of the recovery, yet it cannot be said that because of this fact all parties injured should be required to plead in the same action. We conclude

that the court did not err in refusing to postpone the action to make additional parties.

[8] The remaining assignments undisposed of constitute attacks upon the validity of the agreement hereinbefore so frequently mentioned. A number of these questions are stated, discussed, and determined adversely to appellant in the said case of Commonwealth Bonding & Casualty Insurance Co. v. Beavers, reported in 186 S. W. 859, and we approve the conclusions there reached. It will therefore be unnecessary to do more than to here say that we do not think the agreement under consideration can be said to be void for a want of mutuality because of a want of a reciprocal obligation on the part of the plaintiffs mentioned therein to agree to suffer a judgment in favor of the Commonwealth Bonding & Casualty Insurance Company in event the Bomar Case was decided adversely to him. It is not essential to the validity of an agreement that it be mutually beneficial. If it be not inhibited by law nor contrary to good morals or public policy, and it is made upon a valid consideration, it is sufficient. See our opinion on that subject, not yet officially reported, in the recent case of A. J. Anderson v. First National Bank of La Grange (No. 8499) 191 S. W. 836, and the authorities therein cited. See, also, 1 Elliott on Contracts, § 231; 9 Cyc. 334. We see no reason why an agreement of the kind may not be lawfully made. It certainly tended to prevent a multiplicity of trials and a multiplication of expense of attending the same and of court costs. Such agreements are to be favored by the courts. See Porter v. Holt, 73 Tex. 447, 11 S. W. 494. And it may not be without interest to notice that an agreement almost identical in character was made in the Court of Civil Appeals at El Paso in the case of Commonwealth Bonding & Casualty Insurance Co. v. Brannin, 186 S. W. 862, and by virtue of which that court disposed of some nine cases there pending on appeal. There certainly was a sufficient consideration for the agreement here involved, as is plainly apparent from the testimony. This may be illustrated by reference to the testimony of a single witness, that of Mr. Miller of the firm of Stephens & Miller, who was the leading counsel for the bonding company in all of the cases mentioned in the agreement and who, on the part of the firm, signed the agreement. Among other things he stated, in substance, that it had been agreed to by him upon the ground that the Bomar Case was the weakest case of all those specified, and that, if he could not win that one, he could not win any of them; that he thought that if Judge Dickson decided against the bonding company in the Bomar Case, he would in the balance of them, and that the company would be unable to execute supersedeas bonds, in all cases if they were so required, and the record indicates that they would have been so required had all of the

several cases been pressed to a favorable conclusion by the plaintiffs in order to protect the assets of the company from execution in such number as to practically put it out of business. Mr. Miller further stated that the agreement with his action relating thereto and the reasons therefor had all been placed before the board of directors of the company, and that the company had ratified and approved the agreement; that after the agreement the case now under consideration and all other cases had been continued from term to term as long as he represented the company.

[9] Other testimony submitted supports the conclusion that the attorneys signing the agreement were authorized to so do, and we do not think it can be repudiated by either the bonding company or by its receiver, subsequently appointed, after the company had acted upon the same and received the benefits contemplated thereby.

One of the most interesting, if not important, questions presented in this case, and which does not appear in the Beavers Case, arises under the appellant's ninth assignment of error. Thereunder it is insisted, in substance, that neither the agreement which we have discussed, nor the original defense asserted by the appellee against the Commonwealth Bonding & Casualty Insurance Company is available as against the receiver in this cause, it appearing from the record that the corporation had been declared insolvent, and the appellant receiver duly appointed and ordered to collect its assets for the purpose of paying its debts. The theory of the contention is that debts due the corporation constitute equitable assets which may be reached by creditors through the aid of a court of equity.

[10] In addition to what was said by us on the subject of the receiver's right to resist plaintiff's original cause of action in Commonwealth Bonding & Casualty Insurance Co. v. Porter (No. 8534), this day decided, we will add that ordinarily the liability of the shareholders of the corporation to contribute the amount of their shares as capital is treated in equity as assets, like other legal claims belonging to corporations. This liability, together with the capital actually contributed, constitute a trust fund, which in equity is deemed pledged for the payment of corporate debts. 2 Morawetz on Private Corporations, § 820; 7 R. C. L. § 336, p. 335 et seq.; Hightower v. Thornton, 8 Ga. 486, 42 Am. Dec. 412.

[11] Ordinarily, too, a delinquent subscriber to stock will not be heard to say that his subscription was obtained through fraud of the promoters, agents, or officers of the corporation. Mathis v. Pridham, 1 Tex. Civ. App. 58, 20 S. W. 1015; Roach v. Burgess, 62 S. W. 803; Jones v. Dodge, 97 Ark. 248, 133 S. W. 829, L. R. A. 1915A, 472; in addition to which appellants have cited numerous other cases.

[12] We think, however, that it will be found that most of the cases relied upon by appellants are distinguishable from the one we have before us, in that generally they are either cases where the stockholder is shown to have participated in the proceedings of the corporation, and hence held to be estopped from asserting his defense, or to have so long delayed his complaint as to render it inequitable, as against creditors who presumably have advanced credit on the faith of his subscription, to recognize a defense of fraud on the part of the corporation in securing his subscription obligation. Thus, in the case of Jones v. Dodge, supra, it was held that a subscriber of stock of a corporation who assisted in its organization and aided in giving to it credit, and who gave his note for the subscription, was estopped from urging as a defense to the note the invalidity of the organization of the corporation. As said in 7 R. C. L. § 213, p. 240, that:

"There are many cases in which the subscriber, although his right to rescind would be otherwise good, is prevented from doing so because of his own conduct after making the subscription. * * * Fraud of promoters in procuring a subscription to stock of a corporation before its organization is not a defense against an assessment on the stock by the corporation after the subscriber has carried out his contract and united with others in forming the corporation, but his remedy is restricted to an action against the wrongdoers. And where a stockholder has for a considerable period of time prior to the failure of a corporation occupied the position of one of its stockholders, and exercised and enjoyed the rights, privileges, and fruits of that relation, and received dividends on his stock, after the failure of the corporation, it is too late to rescind his contract for the purchase of the stock on the ground of false representations. A subscriber must act promptly, to entitle him to relief from a subscription to stock procured by fraudulent statements or prospectuses. An unreasonable delay tending to show acquiescence on his part is fatal. He should, within a reasonable time after discovering the fraud, and before the rights of innocent third persons have accrued, rescind, or offer to rescind, the contract, which includes the duty to return, or offer to return, his stock to the company. Laches as a bar to a subscriber's right to repudiate his subscription begins to run, however, only from the time when the subscriber is first chargeable with notice that a fraud has been perpetrated upon him. A delay of two months after the discovery of the falseness of a representation inducing a subscription to the stock of a corporation in securing a rescission is not so unreasonable as to preclude the subscriber from rescinding his contract of subscription and defending against a promissory note given on account of the subscription; no rights of innocent holders of such note being involved."

These quotations, which are fortified by the citation of numerous authorities, we think fairly expressive of the law on the subject under consideration. It is to be implied from the quotation given that if a subscriber to stock acts promptly to secure cancellation of obligations given therefor, and which have been fraudulently procured, he is not debarred from his defense, and this is specifically stated in the next section following that from which we have just quoted. It is there said, among other things, that:

"If a subscription for shares has been obtained by fraudulent representations, it may be annulled by the subscribers at any time before other equities have intervened. * * * A subscriber, notwithstanding the insolvency of the corporation, may rescind his subscription on the ground of fraud, if he has been diligent in discovering the fraud and repudiating the transaction. * * * Whether or not a subscription for stock in a corporation may be set aside for fraud in its procurement, after a receiver has been appointed for the corporation, depends upon the length of time that has elapsed since the subscription was made, whether the subscriber has actively participated in the management of the corporate affairs, whether there has been a lack of diligence on his part in discovering the fraud or in taking steps to rescind after its discovery, and whether any considerable amount of corporate indebtedness incurred since the subscription was made remains outstanding and unpaid."

See, also, 7 Thompson on Corporations, § 8640.

The case of Park v. Kribs, by the Dallas Court of Civil Appeals, reported in 24 Tex. Civ. App. 650, 60 S. W. at page 905, we think closely in point here. In that case the suit was instituted by Kribs as receiver of an association incorporated under the laws of the state of New Hampshire, and the court thus states the question presented by the defensive pleas:

"The first question then presented is, can a stockholder in a building and loan association, who was induced to subscribe for stock therein by the fraudulent representations of an agent of such association, rescind his contract after the corporation had been declared insolvent and a receiver appointed, it not appearing that the rights of third parties had intervened after he became a stockholder, and it not being shown that he ever participated in any of the proceedings of the company?"

After thus stating the question, the court then proceeds to review the authorities both in England and in this country, and concludes that:

"The jury having found that Park was induced to become a subscriber by the fraud of the association, and there being no evidence showing that the rights of third parties had intervened, either as creditors or as stockholders after Park's subscription thereto, we conclude there was no error in the court's charge. Park was entitled, under the facts, to have the amount paid to the company as dues on stock credited on the debt he owed the company. We, therefore, overrule appellee's sixth cross-assignment."

See, also, the case of Robinson v. Dickey, by this court reported in 36 S. W. 499. In that case also a subscriber for stock was, as against a receiver, upheld in a defense that his stock subscription was secured by means of false and fraudulent representations. Appellee also cites the following additional authorities: Thompson on Corporations (2d Ed.) §§ 732 to 735, and cases cited; Henderson v. Railway Co., 17 Tex. 560, 67 Am. Dec. 675; Bosley v. National Machine Co., 123 N. Y. 550, 25 N. E. 990; Vail v. Reynolds, 118 N. Y. 297, 23 N. E. 301; Ashmead v. Colby, 26 Conn. 287; Farrar v. Walker, 3 Dill. U. S. 506, Fed. Cas. No. 4,679; Kentucky Mutual, etc., Co. v. Schaefer, 120 Ky. 227, 85 S. W. 1098;

Savage v. Bartlett, 78 Md. 561, 28 Atl. 414; Fear v. Bartlett, 81 Md. 435, 32 Atl. 322, 33 L. R. A. 721; Upton v. Tribilcock, 91 U. S. 45, 23 L. Ed. 203; Newton National Bank v. Newbegin, 74 Fed. 135, 20 C. C. A. 339, 33 L. R. A. 727; Real Estates Investment Co., Pawle's Case, L. R. 4 Ch. 497 (English); Chamberlain v. Trogden, 148 N. C. 139, 61 S. E. 628, 16 Ann. Cas. 177; Urner v. Sollenberger, 89 Md. 316, 43 Atl. 810; Gross v. Knight, 135 Ga. 60, 68 S. E. 834, 31 L. R. A. (N. S.) 900, and notes.

Applying the law thus indicated to the facts of this case, we think appellant's ninth assignment must be overruled.

[13] The facts show without dispute that long before the Commonwealth Bonding & Casualty Insurance Company was declared insolvent and while it was yet a going concern, the appellee in this case instituted his suit in the proper court to cancel his obligations given for stock. There is not a contention that he was guilty of laches in such action, or that he at any time ever participated as a stockholder or otherwise in the proceedings of the corporation. No evidence is pointed out or suggested that any one of the creditors of the corporation now indirectly represented by the receiver became creditors after appellee subscribed for his stock, or that they were induced by such subscription to extend credit to the corporation. Under such circumstances, the fraud, in a sense being conceded by the agreement hereinbefore discussed, was available to the appellee and effectually sustains the judgment.

We conclude that all assignments of error should be overruled and the judgment affirmed.